Tom A. RUSSELL, Plaintiff,

v.

SCHOUEST MARINE SERVICE, INC., XYZ Insurance Company, Defendants,

v.

DUAL OFFSHORE COMPANY, Third Party Defendant.

Civ. A. No. 80–5054.

United States District Court, E.D. Louisiana.

Jan. 10, 1983.

John G. DeRussy, New Orleans, La., for defendant Schouest Marine Service, Inc.

E. Phelps Gay, W.K. Christovich, New Orleans, La., for third party defendant Dual Offshore.

CASSIBRY, District Judge.

This matter came on for trial on December 13, 1982 on the Third Party Complaint filed by Schouest Marine Services, Inc., against Dual Offshore Company.[1] Schouest

---

1. Tom A. Russell brought suit against his employer Schouest Marine Service, for negligence and for the unseaworthiness of its vessel, the M/V PELICAN I. Schouest Marine Service filed a third-party complaint against Dual Offshore Company for contribution and/or for indemnity, claiming that Dual Offshore Company had breached its warranty of workmanlike per-

seeks to recover all or part of the $100,-000.00 it paid to Plaintiff, Tom A. Russell in settlement of Plaintiff's initial claim against Schouest for Jones Act negligence and unseaworthiness in connection with Plaintiff's accident of March 4, 1980. Plaintiff was injured when a piece of cargo, a cargo basket, on a supply vessel shifted in heavy seas and struck him.

The Court, having considered carefully the pleadings, the testimony and documentary evidence introduced at trial, the memoranda of counsel, the applicable law, and the entire record herein, finds as follows:

## FINDINGS OF FACT

### 1.

In early March 1980, Tom A. Russell was employed by Schouest Marine Services, Inc., as a deckhand and member of the crew of the offshore supply vessel, M/V PELICAN I, owned by Schouest Marine Services, Inc., and time chartered to Chevron Oil Company to carry cargo to and from platforms owned by Chevron in the Gulf of Mexico.

### 2.

At that time Dual Offshore Company was under contract to Chevron Oil Company to perform drilling operations on a fixed platform on the Outer-Continental Shelf, Gulf of Mexico, designated Dual Offshore Company's Rig # 23.[2]

### 3.

On March 3, 1980 a Dual Offshore crane operator and Dual roustabouts on Rig # 23 loaded cargo consisting of casing, hammer units and a cargo basket from the rig onto the deck of the M/V PELICAN I. The cargo basket, estimated at approximately 4 × 6 feet in size, was placed on the casing and was not secured by chain.

### 4.

The proper loading and securing of cargo is the responsibility of the rig employees. The crew of the supply boat does not participate. The Captain of the supply boat, who is responsible for the safety of his cargo and crew, can express any dissatisfaction with the loading and can request any additional securing measures he deems necessary.

### 5.

According to industry custom cargo baskets are not chained under normal conditions. If the seas are rough, or rough seas are expected, they are chained. Rough seas had been experienced before the loading, but they were calming down when the cargo was loaded. Captain Billiot gave the cargo a visual inspection from the wheelhouse before departing the rig, and was not dissatisfied with the unchained cargo basket. He departed the rig headed toward land because of possible severe weather and did not expect anyone to be in the cargo area for the remainder of the voyage.

### 6.

Several hours after departing the Dual Rig # 23, Captain Billiot received a call from the Noble Drilling Rig # 24, requesting the vessel to change direction and come to the Noble rig in order to discharge some water.

### 7.

Upon reaching the Noble Rig # 24 at approximately 1:00 a.m. on March 4, 1980, the crew of the M/V PELICAN I attempted to tie up to the Noble rig with its stern mooring line, during seas estimated by Tom A. Russell as high as 12 to 15 feet. The stern mooring line quickly popped because of the weather conditions, and the M/V PELICAN I then laid off on anchor near the Noble rig until such time as the weather conditions would permit the safe mooring at the rig.

formance in failing to secure the cargo basket in the loading operation. Tom Russell settled with Schouest Marine Service for the sum of one hundred and one thousand dollars, and Schouest claims that Dual Offshore Company owes to Schouest full indemnity, plus attorney's fees, costs, and interest from the date of the settlement. Both Schouest and Dual Offshore Company have agreed that the settlement with Tom Russell was fair and reasonable in the absence of any contributory negligence on the part of Tom Russell.

**2.** Platform "A" situated on Chevron's OCS–G2632 Lease, Garden Banks Block 236 Field, Gulf of Mexico.

8.

Both Mr. Russell and Captain Billiot believed there were one or more subsequent occasions when the M/V PELICAN I attempted to tie up to the Noble Rig # 24 without success because of the rough weather.

9.

The M/V PELICAN I had onboard securing chains which could easily have been used by the captain and crew to further secure the vessel's cargo, including the cargo basket, but Captain Billiot did not determine that such additional securements were necessary.

10.

With seas estimated by Captain Billiot at 7 to 9 feet, the M/V PELICAN I, described as 165 feet in length and 38 feet in width, backed in toward the Noble Rig # 24, taking the seas on its port side, causing the vessel to roll from side to side in a manner which ultimately resulted in the cargo basket shifting when a large wave approached.

11.

At that time Tom Russell, pursuant to his duties as a deck hand, was attempting to grab a mooring line, which was being dropped from the platform, when the cargo basket slid across the deck of the M/V PELICAN I, striking and injuring him.

## CONCLUSIONS OF LAW

1.

This Court has jurisdiction pursuant to 28 U.S.C. § 1333.

2.

Dual Offshore Company is not a stevedoring company and had no direct contractual relationship with Schouest Marine Services, but as a loader of cargo under its contract with Chevron, its duty of workmanlike performance was owed also to Schouest Marine Services, the owner of the M/V PELICAN I. See *Waterman Steamship Corp. v. Dugan & McNamara, Inc.,* 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960).

3.

■ Dual's duty of workmanlike performance was not breached in this case by failing to secure the cargo basket with chains. According to industry custom the type of cargo basket involved in this case was not chained when loaded under normal conditions, but only when rough, severe weather conditions existed. Schouest has not shown that weather conditions at the time of loading required more than the ordinary manner of loading. Its own Captain considered that chaining was not necessary under the circumstances. He intended to return to land to avoid possible worsening weather. As master of the vessel, and thus responsible for the safety of his cargo and crew, he could have required further securing of the cargo if he considered such measures necessary.

4.

■ The need to further secure the cargo basket was caused by the events occurring after departure of the M/V PELICAN I from Dual Rig # 23. The changing of course at the request of Noble Drilling Rig # 24, the subsequent encountering of seas so high that mooring at the rig was impossible, and the positioning of the vessel in such a manner as to cause it to roll severely should have alerted the Captain to the need for further securing of the cargo. He had the material aboard to chain the cargo basket. Under these circumstances Dual Offshore Company did not contribute to the unseaworthy condition of the vessel which caused Russell's injury, and apportionment of fault between Schouest and Dual under *Gator Marine Service Towing v. J. Ray McDermott & Co.,* 651 F.2d 1096 (5th Cir. 1981) is not appropriate.

5.

■ Under this holding the argument that Russell was contributorily negligent is irrelevant. In the event that Dual would be held partially at fault for the unseaworthy condition of the vessel, I would hold that Russell was not contributorily negligent. Russell had no duty to find the saf-

**344**

est way to perform his work, and he is not contributorily negligent because he proceeded to an unsafe area of the vessel. *Ceja v. Mike Hooks, Inc.*, 5th Cir. 690 F.2d 1191 (1982) and cases therein cited.

The Clerk shall prepare judgment dismissing the third-party complaint of Schouest Marine Services, Inc., against Dual Offshore Company.