TAYLOR DIVING AND SALVAGE CO., INC., et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR, Defendant.

Civ. A. No. 85-3400.

United States District Court, District of Columbia.

Feb. 18, 1987.

Appeal Withdrawn Oct. 7, 1987.

Stanley R. Strauss of Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., for plaintiffs.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., for the Government.

OPINION

CHARLES R. RICHEY, District Judge.

INTRODUCTION

In this case, plaintiffs challenge the applicability of certain regulations, promulgated by the Occupational Safety and Health Administration ("OSHA") of the United States Department of Labor, to their operations. The regulations at issue establish a Final Standard Regulating Access to Employee Exposure and Medical Records ("Records Access Standard"). The Records Access Standard has been in effect since May 21, 1980 and requires employers, *inter alia*, to maintain any employee medical records and records of employee exposure to potentially toxic materials or harmful physical agents for a period of thirty years. 29 U.S.C. § 657(c)(3); 29 C.F.R. § 1910.20.

Plaintiff diving companies engage in commercial diving operations in deepwater United States ports, from installations and artificial islands on the Outer Continental Shelf, and from vessels required to have a Certificate of Inspection from the United States Coast Guard. *Plaintiff's Statement of Undisputed Material Facts* at ¶¶ 6, 7. Plaintiff Association of Diving Contractors is a trade association whose members include fifty-three companies that employ almost fifty percent of the nation's full-time domestic commercial divers. *Id.* at ¶ 7. The gist of plaintiffs' argument is that the Records Access Standard is preempted by a previously adopted regulation of the United States Coast Guard and therefore cannot be applied to them.

Now before the Court are cross-motions for summary judgment. The Court finds that there are no factual disputes and that summary judgment is the appropriate method for resolution of this case. The Court further finds that the Coast Guard regulations do not pre-empt the Record Access Standard. By virtue of that finding, the Court will deny plaintiffs' motion and will grant defendant's motion for summary judgment.

## BECAUSE THERE IS NO DISPUTE AS TO ANY MATERIAL FACT SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE.

A recent trilogy of Supreme Court cases has changed many facets of the summary judgment inquiry, but the central rule remains the same: summary judgment is appropriate when there is no genuine dispute of a material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Greenberg v. Food and Drug Administration,* 803 F.2d 1213 (D.C.Cir.1986). Because the material facts are uncontroverted in this case, summary judgment is the appropriate tool for resolving the controversy.

First, there is no dispute that plaintiffs are commercial divers and that the members of their trade association are commercial diving organizations. Nor is there any dispute that laws and regulations governing commercial divers apply to the individual plaintiffs and to the members of the associational plaintiff. *Plaintiffs' Statement of Undisputed Material Facts* ¶¶ 6, 7. The only other facts salient to this case are the provisions of the laws and regulations that govern the diving industry; all other issues require only interpretation of those regulations.

The Occupational Safety and Health Act of 1970 was designed to ensure "safe and healthful working conditions" in American industry. 29 U.S.C. § 651(b). To that end, the Act established a series of standards and requirements that apply to industry in general. Section 4(b)(1) of the Act, however, states that OSHA's safety regime does not "... apply to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1).

On November 16, 1978, the United States Coast Guard promulgated a Final Marine Occupational Safety and Health Standard for Commercial Diving Operations, codified at 46 C.F.R. § 197.200 *et seq.* That standard "prescribes rules for the design, construction, and use of equipment, and inspection, operation, and safety and health standards for commercial diving operations" in deepwater ports, on the Outer Continental Shelf, and from vessels required to have a Certificate of Inspection from the United States Coast Guard. 46 C.F.R. §§ 197.200, 197.202. This regulation also mandates that commercial divers create records whenever a diving accident has occurred and maintain those records for a six-month period. Id at §§ 197.484–197.488. There is no question that plaintiffs are subject to these regulations.

The Records Access Standard was adopted on May 23, 1980. As mentioned above, this OSHA regulation requires employers to maintain any employee medical records they were previously required to create for a thirty-year period. The regulations provide for employee access to these records and for government access so that the "detection, treatment, and prevention of occupational disease" may be improved. 29 C.F.R. § 1910.20(a).

The only issue in this case is whether the Coast Guard's regulation of commercial divers pre-empts OSHA's Records Access Standards. In other words, whether plaintiffs are subject to the OSHA rule depends only on whether the exemption from OSHA created by Section 4(b)(1) of the Act for regulated "working conditions" can extend to record-keeping and access.

## BECAUSE PLAINTIFFS ARE NOT EXEMPT FROM THE RECORDS ACCESS STANDARD, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

Section 4(b)(1) states in full:

Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory au-

thority to prescribe or enforce standards or regulations affecting occupational safety or health.

Plaintiffs contend that this section was intended to have "all-embracing preemptive effect" and, as a result, any Coast Guard regulation of commercial divers pre-empts the OSHA record-keeping standards. *Plaintiffs' Statement of Points and Authorities in Opposition to Cross–Motion for Summary Judgment,* 4–6. Neither legislative history nor case law supports plaintiffs' claim.

Plaintiffs rely heavily on the Committee Report that accompanied the House version of the bill to establish OSHA. The House and Senate initially differed on the scope of the exemption from OSHA for industries regulated by other federal agencies. The House bill exempted from OSHA's purview "working conditions of employees *with respect to whom* other Federal agencies . . . exercise statutory authority." Staff of Senate Committee on Labor and Public Welfare, 92nd Cong. 1st Sess., *Legislative History of the Occupational Health and Safety Act of 1970,* 1135 (Comm.Print 1971) (emphasis added). That the Senate's language was intended to create a narrower exemption is made clear in the Senate Report accompanying its bill:

> The bill does not authorize the Secretary of Labor to assert authority . . . over *particular working conditions regarding which* another Federal agency exercises statutory authority to prescribe or enforce standards affecting occupational safety and health.

*Id.* at 162, U.S.Code Cong. & Admin.News 1970, pp. 5177, 5199 (emphasis added).

Thus, the Senate's version exempted working conditions, while the House version exempted employees, a difference recognized by the Conference Committee called upon to fashion the final law. *Id.* at 1204. And it was the *Senate's* language that the Conference Committee adopted. *Id.* at 1185–86. Thus, the section is not the all-embracing pre-emption that plaintiffs

claim; it is a narrow exemption that comes into play only when both OSHA and another federal agency (or, in certain cases, state agencies) attempt to regulate the conditions of the workplace.

It cannot be gainsaid that, under Section 4(b)(1), the Coast Guard's minutely detailed regulatory standards would pre-empt any OSHA attempt to regulate working conditions among commercial divers. The Coast Guard is a "federal agency" that has exercised its statutory authority to "prescribe . . . regulations affecting occupational safety or health;" as such, Coast Guard regulation of plaintiffs' *working conditions* would pre-empt any OSHA effort to impose its own concept of health and safety needs on the diving industry. 29 U.S.C. § 653(b)(1); *see also, Donovan v. Texaco, Inc.,* 720 F.2d 825 (5th Cir.1983) (Coast Guard regulations pre-empt OSHA regulations of working conditions of seamen); *Baltimore and Ohio Railroad Co. v. Occupational Safety and Health Review Commission,* 548 F.2d 1052 (D.C.Cir.1976) (per curiam) (principles governing pre-emption under Section 4(b)(1)); *Organized Migrants in Community Action v. Brennan,* 520 F.2d 1161 (D.C.Cir.1975) (EPA regulation of agricultural pesticides pre-empt OSHA regulations). It is, however, equally clear that the OSHA Records Access Standards—which are the only OSHA regulations at issue here—do not intrude upon the working conditions of commercial divers or any other industrial employers.

The phrase "working conditions" has a meaning "more limited than a layman might assume." *Laffey v. Northwest Airlines,* 567 F.2d 429, 453 n. 153 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The Supreme Court has spoken to that meaning, and has decided that the phrase derives meaning from "the language of industrial relations." *Corning Glass Workers v. Brennan,* 417 U.S. 188, 202, 94 S.Ct. 2223, 2232, 41 L.Ed.2d 1 (1974).[1] Accordingly, the Court stated:

---

**1.** Since *Corning Glass Workers* involved the Equal Pay Act, its ascription of meaning to "working conditions" might seem to have limit-

ed applicability. The Court of Appeals for this Circuit, however, has extended the *Corning Glass* holding to OSHA, noting that "[t]he lan-

[T]he element of working conditions encompasses two subfactors: 'surroundings' and 'hazards.' 'Surroundings' measures the elements, such as toxic chemicals or fumes, regularly encountered by a worker, their intensity, and their frequency. 'Hazard' takes into account the physical hazards regularly encountered, their frequency, and the severity of injury they can cause.

*Id.* (footnotes omitted); *see also, Oil, Chemical & Atomic Workers International Union v. American Cyanamid Co.,* 741 F.2d 444, 448 (D.C.Cir.1984).

It is difficult to discern any connection between the Records Access Standard and "working conditions," especially given the narrow definition to which the term has been circumscribed. The Records Access Standard governs retention of and access to employee medical records; its purpose is to improve detection, treatment, and prevention of occupational disease. 29 C.F.R. § 1910.20(a). It does nothing else. But plaintiffs contend that mandatory record-keeping is a *means* for regulating working conditions and therefore cannot be mandated by OSHA.

Plaintiffs' argument is not convincing. First, the legislative history, and plain language of the exemption, makes clear that Congress intended specific agency regulations of working conditions to pre-empt only OSHA efforts to regulate those same working conditions—and nothing more. Whatever connection may exist between creation of a data base by which to measure incidence of occupational illness and regulation of the conditions that may give rise to disease is far too attenuated to come within the pre-emption wrought by Section 4(b)(1); indeed, at most the record-keeping standards create the *potential* for future regulation. Absent an actual attempt at regulation, merely creating the potential for regulating working conditions does not interfere with the Coast Guard's scheme. Simply put, on the record before the Court there is no OSHA regulation for the Coast

Guard to pre-empt. The regulations are too distinct to cause a problem.

Plaintiffs have also suggested that the Coast Guard record-keeping requirements pre-empt any OSHA attempts at imposing a record-keeping or records-access requirement on commercial divers. As Section 4(b)(1) does not apply to employee records, the basis for this argument is difficult to discern. But, even if Section 4(b)(1) prevented OSHA from imposing some record-keeping and access systems, the Records Access Rule would stand.

Even a cursory examination of the Records Access rule and the Coast Guard requirements reveals their demonstrably different purposes. The Coast Guard regulations require diving companies to create records if a diver is involved in an accident and to retain those records for a six-month period. 46 C.F.R. §§ 197.480–197.488. These minimal record-keeping requirements are obviously related to particular diving casualties and to establishing a basis on which the Coast Guard can evaluate whether a particular operator's practices were unsafe. *See* 46 C.F.R. § 1910.484–1910.488. In contrast, the OSHA Records Access Standard is designed to create a data base by which government, and individual employees, can measure the incidence of delayed-onset and other industrial illnesses. The records to be retained, which range from medical histories to analyses of equipment, reasonably relate to, and are necessary for, that important purpose.

The signal feature of any pre-emption doctrine is that one rule of law can pre-empt another only if both serve the same purpose. *Baltimore and Ohio Railroad Co. v. Occupational Safety and Health Review Commission,* 548 F.2d at 1055. Because the purposes of the regulations at issue here could not be more dissimilar, plaintiffs' pre-emption argument must fail.

In short, there is no basis for concluding that the Coast Guard regulations prevent OSHA from imposing the Records Access

---

guage of industrial relations, of course, is as relevant to the OSH Act as to the Equal Pay Act." *Oil, Chemical & Atomic Workers Interna-* *tional Union v. American Cyanamid Co.,* 741 F.2d 444, 448 (D.C.Cir.1984).

**34**

Rule upon plaintiffs. Accordingly, the Court will issue an Order, of even date herewith, denying plaintiffs' summary judgment motion and granting defendant's motion for summary judgment.