**Robert B. REICH, Secretary of Labor, United States Department of Labor,**

v.

**Douglas NELSON, Individually and Weeks Marine, Incorporated.**

**Civ. A. No. 93–MC–0314.**

United States District Court, E.D. Pennsylvania.

Jan. 5, 1994.

Order Denying Reconsideration Feb. 1, 1994.

Order Denying Stay Feb. 1, 1994.

---

Maureen A. Russo, U.S. Dept. of Labor, Philadelphia, PA, for petitioner.

James A. Yulman, Krusen, Evans & Byrne, Philadelphia, PA, for respondents.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This miscellaneous matter has been brought before this court by Petition of the Secretary of Labor for Enforcement of certain subpoenas and subpoenas duces tecum addressed to the respondents, Douglas Nelson and his employer, Weeks Marine, Inc. and by the cross-motion/petition of those respondents to quash the Secretary's subpoenas and to enjoin the Occupational Safety and Health Administration (OSHA) from any further efforts to inspect or regulate working conditions upon Weeks Marine's dredge, the *New York*. Oral argument on this matter was held on December 15 and December 20, 1993 and the matter is now ripe for disposition.

## I. STATEMENT OF RELEVANT FACTS.

The instant motions have their genesis in an accident which occurred on the dredge *New York* on October 29, 1993 while it was operating in the navigable waters of the Delaware River some 150 yards from shore off the BP Oil Company terminal in Marcus Hook, Pennsylvania. At approximately 4:25 p.m. on that date, the body of Adam T. Tarcelli, a Weeks Marine engineer, was found partially inside the base compartment area of the dredge's crane. Although there were no eyewitnesses to the accident, the coroner's and preliminary accident reports indicate that Mr. Tarcelli had suffered a fatal crushing injury to the back and right torso as a result of having been caught in the crane support while it was engaged in the process of clearing sediment from the bed of the Delaware River.

Immediately after the accident, in addition to contacting the local police and emergency medical personnel, Weeks Marine notified the U.S. Coast Guard and a Coast Guard inspection team arrived approximately one hour later. At or about 8:00 p.m., Coast Guard CWO2 Andrew Gillie boarded the *New York* to conduct an investigation. CWO2 Gillie interviewed the other workers on the 3 to 11 p.m. shift that day, carefully inspected the interior and exterior of the vessel including the crane and the accident area, directed that the crane operator be tested for chemicals, drugs and alcohol and instructed Weeks Marine to file a USCG Form 2692, Report of Marine Accident, Injury or Death. The crane operator was then immediately tested as per instructions and the Form 2692 was completed and filed with the Coast Guard on November 2, 1993. Subsequently, however, it was determined by Officer Gillie that the *New York* was an uninspected, undocumented vessel and the Coast Guard therefore apparently concluded that the accident in question was subject to OSHA reporting requirements. Accordingly, on or about November 9, 1993, the Coast Guard having previously notified OSHA, it closed its file on the case.

In the interim, beginning on or about November 3, 1993, OSHA began conducting its own investigation into Mr. Tarcelli's fatal accident. Weeks Marine evidently cooperated in the initial phases of this investigation, permitting OSHA inspectors to board the dredge, investigate and photograph any areas of interest, and to interview and question company personnel in the presence of counsel. Indeed, it was only when OSHA sought to privately interview Weeks' personnel without counsel present that the instant dispute arose concerning whether OSHA had the "right" (as it claimed) to do so and whether OSHA or the U.S. Coast Guard in fact had the authority or jurisdiction to investigate the circumstances surrounding Mr. Tarcelli's death. OSHA thereafter issued the subpoenas and subpoenas duces tecum at issue in furtherance of its investigation.

## II. *DISCUSSION.*

It is axiomatic that to properly enforce an administrative subpoena duces tecum, the following three factors must coalesce. First, the inquiry underlying the subpoena must be within the authority of the agency. Second, the demand for production must not be too indefinite and third, the information sought must be reasonably relevant to the authorized inquiry. *Dole v. Trinity Industries, Inc.,* 904 F.2d 867, 871 (3rd Cir.1990) citing *U.S. v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 368–369, 94 L.Ed. 401 (1950). *See Also: Doyle v. U.S. Postal Service,* 771 F.Supp. 138, 139 (E.D.Va.1991).

In this case, Respondents have taken the position that OSHA has no jurisdiction or authority to act in this matter by virtue of the fact that under 14 U.S.C. § 2, Congress assigned to the Coast Guard the exclusive authority to promulgate and to enforce safety regulations on vessels operating on navigable waters in the United States.[1] They urge that this position is further bolstered by the provisions of 46 U.S.C. § 6301, *et seq.* which dictate that the Secretary of the Department in which the Coast Guard is operating prescribe regulations calling for "the immediate investigation of marine casualties under this part to decide as closely as possible" among other things, the cause of the casualty and whether an act of misconduct, incompetence, negligence, etc. was committed which contributed to the cause of the casualty and by the "pre-emption" provision of the OSH Act, 29 U.S.C. § 653(b)(1), which provides that "[n]othing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."

The Secretary of Labor, in contrast, essentially contends that insofar as the United States Coast Guard's responsibility for dredges is extremely limited, the Occupational Safety and Health Administration has the authority to inspect and investigate working conditions on these vessels by default. After carefully reviewing the relevant federal statutes and regulations and the modicum of caselaw addressing this issue, we are now constrained to agree with the government's position.

It is the well-stated purpose of the Occupational Safety and Health Act that Congress, "through the exercise of its powers to regu-

1. Specifically, 14 U.S.C. § 2 states:

"The Coast Guard shall enforce or assist in the enforcement of all applicable Federal laws on, under, and over the high seas and waters subject to the jurisdiction of the United States; shall engage in maritime air surveillance or interdiction to enforce or assist in the enforcement of the laws of the United States; shall administer laws and promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States covering all matters not specifically delegated by law to some other executive department; shall develop, estab-

lish, maintain, and operate, with due regard to the requirements of national defense, aids to maritime navigation, icebreaking facilities, and rescue facilities for the promotion of safety on, under, and over the high seas and waters subject to the jurisdiction of the United States; shall, pursuant to international agreements, develop, establish, maintain and operate icebreaking facilities on, under and over waters other than the high seas and waters subject to the jurisdiction of the United States; and shall maintain a state of readiness to function as a specialized service in the Navy in time of war, including the fulfillment of Maritime Defense Zone command responsibilities."

late commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources … by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses affecting interstate commerce, and by creating an Occupational Safety and Health Review Commission for carrying out adjudicatory functions under this chapter.…" 29 U.S.C. § 651(b)(3). The OSH Act is by its own terms very broad inasmuch as it applies with respect to employment performed in workplaces in any State, the District of Columbia and the various territories and protectorates of the United States and defines an employer as "a person engaged in a business affecting commerce who has employees" (except for the United States or any State or political subdivision of a State). Similarly, an "employee" is said to be "an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C. §§ 652(5), (6), 653(a). Thus, as respondents noted, except when other Federal agencies or State agencies acting under 42 U.S.C. § 2021 are empowered to prescribe and enforce standards and regulations governing occupational safety and health, OSHA applies. 29 U.S.C. § 653(b)(1).

The provisions of Title 46, on the other hand, are far more specific and far less broad. It is true that under 46 U.S.C. § 6301, the Coast Guard is vested with jurisdiction to promulgate regulations for the immediate investigation of marine casualties and that under § 4.03–1, the term "marine casualty or accident" is defined as meaning "any casualty or accident involving any vessel other than public vessels if such casualty or accident occurs upon the navigable waters of the United States, its territories or possessions or any casualty or accident wherever such casualty or accident may occur involving any United States' vessel which is not a public vessel." Where an uninspected vessel[2] is found, however, the Coast Guard's authority and responsibilities are drastically curtailed. To be sure, although 46 U.S.C. § 4102 mandates that certain safety equipment be carried and maintained on uninspected vessels and § 4106 prescribes certain penalties for a failure to do so, it is patently unclear how or by what agency compliance with those requirements is to be ascertained.

In summary then, while it appears that the Coast Guard has not assumed jurisdiction over and has not promulgated any regulations or standards affecting working conditions aboard uninspected vessels, it nevertheless has the authority to *investigate* so-called marine casualties aboard such vessels. It likewise appears that, in the absence of concurrent statutory authority by another Federal agency, *OSHA* has authority to *inspect* working conditions aboard uninspected vessels. *See:* 29 U.S.C. § 657(a). The threshold inquiry thus becomes whether or not the Coast Guard's investigative responsibilities effectively "preempt" OSHA's responsibility to inspect and investigate the working conditions aboard dredges such as the one at issue in this case.

It has for some time been the law in this Circuit that Section 4(b)(1), 29 U.S.C. § 653(b)(1) preemption requires a two-part showing; first, that a coordinate federal agency has "exercised" authority by promulgating regulations in the area and second, that these concurrent regulations cover the specific "working conditions" purportedly within OSHA's jurisdiction. "Working conditions" have been defined as the "environmental area in which an employee customarily goes about his daily tasks." *Pennsylvania Electric Company v. Federal Mine Safety and Health Review Commission,* 969 F.2d 1501, 1504 (3rd Cir.1991); *Columbia Gas of Pennsylvania, Inc. v. Marshall,* 636 F.2d 913, 916 (3rd Cir.1980). What's more, the preempting agency must actually have pro-

---

2. Under 46 U.S.C. § 2101(43) an uninspected vessel "means a vessel not subject to inspection under section 3301 of this title that is not a recreational vessel." As the term implies, unlike vessels which are subject to inspection, there are no provisions in the Code for regular, periodic examinations of uninspected vessels so as to ensure compliance with the safety equipment requirements delineated in 46 U.S.C. § 4102 or for the determination of when penalties for violations of that act would be appropriately levied. *See:* 46 U.S.C. §§ 3305, 3306, 4106.

mulgated regulations; the mere declaration of authority over the area is not enough. *Id.* at note 7.

Although the issue is one of first impression in the Third Circuit, both the District Court for the District of Columbia and the Court of Appeals for the Eleventh Circuit have had occasion to consider the interplay between the Coast Guard and OSHA regulations.[3] In *Taylor Diving and Salvage Co. v. U.S. Department of Labor,* 674 F.Supp. 30 (D.D.C.1987), the plaintiff commercial diving companies and trade association argued that OSHA's Records Access Standard, which required employers to maintain employee medical records was pre-empted by the Coast Guard's regulations governing final marine occupational safety and health for commercial diving operations. In holding that OSHA's record-keeping regulations were not preempted, the *Taylor* court looked to the legislative history and plain language of the section 4(b)(1) exemption and, finding it to be quite narrow, observed that Congress intended specific agency regulations of working conditions to preempt only OSHA efforts to regulate those same working conditions and nothing more. The court further reasoned:

"Absent an actual attempt at regulation, merely creating the potential for regulating working conditions does not interfere with the Coast Guard's scheme.... The signal feature of any pre-emption doctrine is that one rule of law can pre-empt another only if both serve the same purpose."

674 F.Supp. at 33, citing *Baltimore and Ohio Railroad Co. v. Occupational Safety and Health Review Commission,* 548 F.2d 1052, 1055 (D.C.Cir.1976) (per curiam).

Similarly in *In Re Inspection of Norfolk Dredging Company,* 783 F.2d 1526 (11th Cir. 1986), the Eleventh Circuit Court of Appeals applied that same rationale to the identical question now facing this court: whether the Coast Guard's exercise of authority over maritime safety is sufficient to pre-empt

OSHA of jurisdiction over working conditions aboard uninspected vessels. Answering that question firmly in the negative, the *Norfolk* court noted the distinct difference between inspected and uninspected vessels in the Coast Guard's regulatory scheme and held:

"The Coast Guard's regulation of safety aboard uninspected vessels does not encompass crane safety, the working condition at issue here. (citing 29 C.F.R. § 1926.550 (1985)) The Coast Guard also has not articulated a policy against regulation of crane equipment.

In fact, the Coast Guard has historically viewed its authority to regulate uninspected vessels as limited to the regulation of life-saving and fire fighting equipment, back fire flame control, ventilation, the reporting of casualties and the licensing of operators ... (citations omitted) ... Were we to adopt Norfolk's position, no federal agency would have the authority to regulate the safety of crane equipment aboard uninspected vessels. The result which Norfolk urges us to reach is clearly contrary to the legislative intent of section 4(b)(1). Congress obviously wanted ... health and safety conditions aboard uninspected vessels to be regulated ... by some agency since it took the unusual step of requiring an actual exercise of authority to forestall OSHA coverage."

783 F.2d at 1530–1531, citing, *inter alia, Donovan v. Red Star Marine Services, Inc.,* 739 F.2d 774, 777 (2nd Cir.1984); *Southern Pacific Transportation Co. v. Usery,* 539 F.2d 386, 393 (5th Cir.1976).

Reviewing the case at bar in light of all of the foregoing, we are unable to distinguish the issues raised here from those presented to the *Norfolk* court. Although the *Norfolk* decision is certainly not binding upon us, we nevertheless believe its rationale is sound. Certainly, given the broad policy behind the OSHA Act to provide a safe working environment for every working man and woman in

---

**3.** We are cognizant that in *Donovan v. Texaco, Inc.,* 720 F.2d 825 (5th Cir.1983), the 5th Circuit Court of Appeals was also presented with the question of whether OSHA had authority to investigate the allegations of a discharged seaman that he had been fired in retaliation for his alleged role as a "whistle blower" or whether that

was a matter which fell within the Coast Guard's jurisdiction. Inasmuch as the vessel at issue in that case was an inspected vessel and this distinction was in large measure the linchpin of that court's holding, we do not find the *Donovan* court's rationale appropriate given the facts in the instant matter.

the nation, it could not have been Congress' intent to afford the Coast Guard only investigative powers over marine casualties while simultaneously precluding OSHA from exercising its authority to inspect and investigate the overall working conditions upon the uninspected vessel upon which that casualty occurred. Indeed, under that scenario, OSHA has inspection and investigative powers aboard such vessels *only* in the event that no casualty occurred and the Coast Guard, lacking inspection authority in the absence of a casualty, has no ability to prevent such a mishap from happening in the first place. Such a result would be inapposite to the principles and policies underlying both the Coast Guard and OSH Acts and we decline to so construe the law. So saying, the Secretary of Labor's subpoenas will be enforced in accordance with the attached order.

## ORDER

AND NOW, this 5th day of January, 1994, upon consideration of the Secretary of Labor's Petition to Enforce the Subpoenas *Duces Tecum* and *Ad Testificandum* Addressed to Weeks Marine, Inc. and Douglas Nelson,

individually, it is hereby ORDERED that the Petition is GRANTED and that the said Respondents are DIRECTED to comply with the subpoenas in every respect.

## ORDER ON RECONSIDERATION

AND NOW, this 1st day of February, 1994, upon consideration of Defendant/Respondents' Motion to Reconsider this Court's January 5, 1994 Memorandum and Order, it is hereby ORDERED that the Motion is DENIED.[1]

## ORDER ON STAY

AND NOW, this 1st day of February, 1994, upon consideration of Defendant/Respondents' Motion for Stay of this Court's January 5, 1994 Order, it is hereby ORDERED that the Motion is DENIED.[1]

1. The thrust of respondents' motion to reconsider is that this court's findings, conclusions and analysis of the issues raised by the Secretary of Labor's petition to enforce its administrative subpoenas and its own cross-motion to quash those subpoenas were legally erroneous. As such, it therefore appears that the respondents' motion is one under Fed.R.Civ.P. 59(e) and not Fed. R.Civ.P. 60(b) and that it was to have been filed within ten (10) days of the date that the judgment was entered. *See: U.S. v. Accounts Nos. 3034504 and 144–07143*, 971 F.2d 974, 987–988 (3rd Cir. 1992); *Smith v. Evans*, 853 F.2d 155, 158–159 (3rd Cir.1988). *See Also:* Local Rule of Civil Procedure 20(g). It is equally clear that a district court may not extend or waive the ten day limit. *Smith v. Evans*, at 157.

In this case, the January 5, 1994 Memorandum and Order granting the Secretary's petition and denying Weeks Marine's motion to quash was (for some unknown reason) entered by the Clerk's office on January 10, 1994. Accordingly, respondents had until the close of business on January 25, 1994 to file their reconsideration motion. The motion, however, was not filed until January 26, 1994 and, in light of the preceding precedent, we are therefore precluded from considering it.

This conclusion notwithstanding, a quick review of the respondents' motion reveals that it essentially reiterates the very same arguments which were advanced in support of the original

motion to quash the petitioner's subpoenas. Insofar as this court carefully considered the respondents' arguments vis-a-vis the administrative subpoenas in drafting and entering the January 5, 1994 Memorandum and Order, we respectfully suggest to the parties that we would be hardpressed to find any merit to the instant reconsideration motion were we in any position to consider it.

1. This court is vested with discretion, under Fed. R.Civ.P. 62 to stay proceedings, including execution of its orders, pending appeals and motions for reconsideration. In determining whether to issue such a stay of proceedings, however, several factors must be considered. These include: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987).

Viewing the matter at bar in light of the above-referenced factors, we find: (1) that in consideration of the absence of Third Circuit precedent in this area, it is virtually impossible to ascertain at this juncture the likelihood of respondents' success on the merits of their appeal; (2) that given

**26**

the strong public policy behind the OSH act favoring quick investigation into possible workplace hazards, the public interest clearly lies in favor of denying the application for stay and permitting the Secretary to go forward with its investigation; and (3) that in light of the six-month statute of limitations on the issuance of

citations for violations of the OSH act set forth at 29 U.S.C. § 658(c), the balance of the equities with respect to the potential for substantial harm to be suffered by the parties, also weighs in favor of denying the respondents' stay request.   Accordingly, the motion for stay pending appeal to the Third Circuit Court of Appeals is denied.