649 So.2d 431 (1994)
Aubry WATTERSON, et al., Plaintiffs/Appellants,
v.
MALLARD BAY DRILLING, INC., et al., Defendants/Appellees.
No. 93-1494.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1994.
Writ Denied January 27, 1995.
*432 Fred H. Belcher Jr., Edward B. Kramer, Baton Rouge, for Aubry Watterson et al.
Douglas C. Longman Jr., Lafayette, for Mallard Bay Drilling, Inc., et al.
*433 Before GUIDRY, DOUCET, LABORDE and COOKS, JJ., and BERTRAND,[*] J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
This maritime action was tried without a jury and resulted in a $498,508 award to plaintiff against the shipowner and its insurers, but reduced by 85% contributory negligence of the plaintiff. Watterson appealed and assigned six errors. Mallard answered the appeal and urged three errors.
Plaintiff, Aubry Watterson, an employee of Mallard Bay Drilling, Inc., sued Mallard under the Jones Act and general maritime law, for injuries he allegedly sustained in the course of his employment.
The parties stipulated that on October 23, 1990, the day of the accident, Watterson was employed by Mallard as a "floorhand" and a member of the crew assigned to its inland drill barge, Mallard Bay Rig # 27, located in Terrebonne Parish in navigable waters.
Watterson was hired by Mallard, a drilling contractor, in May of 1990 and assigned to Mallard Bay Rig # 27, and inland barge. He had previously worked on this rig for two years when it was owned by another drilling contractor. Watterson was an experienced hand with over seven years in the oil patch. During October 1990, Rig # 27 was on location in Catfish Lake, within the territorial waters of Louisiana. As a floorhand, Watterson worked seven days "on" and seven days "off."
On October 23, 1990, Watterson and his fellow crew members arrived on the rig to begin their seven day hitch. Shortly after beginning their tour at 6:00 a.m., Watterson and fellow crew member, James Jones, were assigned to chip paint on the rig's substructure above the keyway deck which is located on the bottom deck of the rig directly below the rig floor. The rig crews had been chipping paint on the substructure for several months. In order to chip the substructure above the keyway deck, an aluminum, non-skid scaffold board was used. It was positioned between the crane motor deck and the shale shaker deck some 10 to 12 feet above the keyway deck. The crew members could step easily from the crane motor deck to the scaffold. After receiving instructions from the driller, Watterson and his co-employee, Jones, left the rig floor, walked down to the pipe rack and from the pipe rack onto the crane motor deck. Watterson was wearing a safety harness which he attached to an overhead beam after stepping from the crane motor deck onto the scaffold board. Watterson noticed water on the scaffold board and decided to clean it up with rags that were located in a room below him on the keyway deck.
Watterson spotted a wooden ladder, below the scaffold, on the keyway deck. Instead of climbing off the scaffold the same way he climbed on. Watterson decided to take a short cut by climbing down from the scaffold board to the ladder. He voluntarily chose to use the ladder although he had been told not to work on top of a ladder. He had not been told to use the ladder (nor had he seen anyone else use it.) Nothing prevented Watterson from getting off the scaffold the same way he had gotten on. The top of the ladder was approximately one foot from and two feet below the scaffold board with the steps of the ladder facing away from the scaffold. Watterson knelt down on the edge of the scaffold facing the crane deck. The ladder was behind him and to his right. He attempted to shimmy off the scaffold groping for the ladder with his right leg.
Watterson testified that the scaffold board shifted, and he fell onto the ladder and then to the keyway deck. He admitted that prior to the accident, the scaffold never slipped or moved and was sturdy.

ACTIONS OF TRIAL COURT
The court found that the scaffold was extended from the crane motor deck to the pipe joints or rack and there was no unseaworthiness or negligence in providing access to the scaffold. He found that the lack of a railing *434 on the scaffold was not a proximate cause of the accident because a railing would have prevented an inadvertent fall from the scaffold, not Watterson's intentional attempt to climb off the scaffold. He found that the presence of the ladder was neither negligence nor did it make the rig unseaworthy because it was not to be used as a means of access to and from the scaffold and that any reasonable person would realize the obvious danger of using it for access. Therefore, there was no obligation on the part of Mallard to warn of the danger or to prohibit the use of the ladder for access.
The trial court found, as a matter of fact, that the scaffold did move when Watterson attempted to get down from it onto the ladder and that this was caused by a failure to properly secure the scaffold. The court further found that the purpose of securing the ends of the scaffold is to prevent it from moving while in use, and this failure was a cause in fact and a proximate cause of Watterson falling to the keyway deck.
The trial court assigned 85% of the fault to Watterson and 15% to Mallard.

ISSUES
The issues presented in this appeal are set forth in the respective parties' assignments of error. Plaintiff, Watterson, contends that the trial court erred in the following respects:
1. The trial court erred in not applying 45 U.S.C. § 53 and the Kernan Rule to bar contributory negligence on the part of Watterson.
2. The trial court erred in applying the standard of "ordinary care" and not "slight care" in this Jones Act case.
3. The trial court erred in finding Watterson is 85% contributorily negligent in this case.
4. The trial court erred in not using the "scintilla of evidence" standard of the Jones Act, instead of the "preponderance of the evidence" standard, which is used to measure the conduct of Watterson.
5. The trial court erred in awarding only $250,000 in general damages for two fusion surgeries to a 28 year old seaman.
6. The trial court erred in not awarding "found."
Defendant, Mallard, in its answer to the appeal assigns the following errors:
1. Was the trial court's finding that Mallard was 15% at fault manifestly erroneous?
2. Was the trial court's finding that Watterson sustained damages of $498,508 manifestly erroneous?
3. Did the trial court err in awarding prejudgment interest on items of future damages.
Plaintiff's first four assignments of error and defendant's first assignment of error will be addressed together. They all deal with negligence, standard of care and the allocation of fault.
In a Jones Act case, evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability, and the plaintiff's burden to show causation is "featherweight." Johnson v. Offshore Express, Inc., 845 F.2d 1347 (5th Cir.1988), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988); Daugherty v. Cross Marine, Inc., 598 So.2d 595 (La.App. 4th Cir.1992).
Under this standard, the trial court's finding that Mallard was negligent in failing to properly secure the scaffold is supported by the evidence and thus not clearly erroneous. Likewise, the trial court was not in error in finding Watterson negligent in attempting to leave the scaffold by way of the ladder.
Both Watterson and Mallard complain about the percentage of fault assessed them by the trial judge. Mallard contends that the sole cause of the accident was Watterson's voluntary decision to try a short cut. This argument has no merit. The trial court in its oral reasons stated that:
I find that the preponderance of the evidence shows that the scaffolding did move when Mr. Watterson attempted to get down from the scaffolding onto the ladder, and that this was caused by a failure to properly secure the scaffolding. The purpose of securing the ends of the scaffolding is to prevent the scaffolding from moving while the workers are using *435 it. And that failure to secure the ends of the scaffolding was a cause, in fact, and a proximate cause of Mr. Watterson falling to the keyway deck.
Our manifest error standard of review of fact is applicable in this case. Hanks v. Barge Transport Co., Inc., 563 So.2d 1297 (La.App. 3d Cir.), writ denied, 569 So.2d 964 (La.1990). The trial court's finding of negligence on the part of Mallard is supported by the evidence and is not clearly wrong.
The respective duties of an employee and a seaman were discussed by the U.S. Fifth Circuit Court of Appeals in Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir. 1982), wherein the court stated:
In contrast to the broad duty imposed upon a vessel owner [employer] to supply a safe work place, the seaman's duty to protect himself is slight. Bobb v. Modern Products, Inc., 648 F.2d 1051, 1056-57 (5th Cir.1981).
690 F.2d at p. 1193.
Considering the relative burdens of the parties involved and the facts revealed by the record, we find that the trial judge committed clear error in his apportionment of fault at 85% to Watterson and 15% to Mallard. However, for the reasons to follow, there is no need for us to reapportion fault.
Watterson urges that the trial court erred in not applying 45 U.S.C. § 53 to bar a finding on contributory negligence on the part of Watterson. That section of the U.S.Code provides:
In all actions ... brought against any such common carrier by railroad employees under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. (Emphasis added.)
This provision of the FELA was made applicable to actions under the Jones Act by the U.S. Supreme Court in Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). Kernan is the leading case concerning the operation of Section 53 of the FELA in a Jones Act case. Section 53 of FELA bars a court from considering the contributory negligence of the seaman if the employer has violated a statute enacted for the safety of employees. Roy Crook & Sons, Inc. v. Allen, 778 F.2d 1037 (5th Cir.1985).
In this case, the status of Rig 27 as a vessel and the plaintiff as a seaman were not challenged by the parties; therefore, Watterson's claim arises under the Jones Act, 46 U.S.C.App. Section 688, which provides seamen an action for personal injury. The rights afforded seamen against their employers under the Jones Act are the same as those enjoyed by railroad employees under the Federal Employers' Liability Act (FELA), 45 U.S.C. Sections 51-60. The Jones Act explicitly incorporates the FELA, including Section 53.
Watterson contends that Mallard's failure to properly secure the scaffold to prevent movement constitutes a violation of a "statute enacted for the safety of employees" and that the violation contributed to his injuries.
The Coast Guard, generally, has jurisdiction over the operations of vessels and the conduct of the crew. The America National Standards (ANSI) are incorporated by reference into the Coast Guard regulations. 46 C.F.R. § 107.115. The Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651, et seq., provides regulations to insure safe and healthful working conditions to the working people of the nation. It applies to employment performed in work places in the states, the District of Columbia, the various territories and protectorates of the United States and to the outer continental shelf lands. See Reich v. Nelson, 843 F.Supp. 20 (E.D.Pa.1994).
*436 The OSHA regulations at 29 C.F.R. § 1910.28(a)(11) provide that all scaffold planking or platforms shall be secured from movement. The ANSI contains a similar provision.
Watterson's witness, Dr. Percy Miller, an expert in the field of mechanical and safety engineering, testified without contradiction that Mallard's failure to secure the scaffold properly constituted a violation of the safety standards set out in both OSHA and ANSI.
The scaffold board used in the instant case was lashed to a three inch pipe or tubing with a braided cotton line called a sash cord. Dr. Miller, in describing this procedure as faulty, testified as follows:
Q. Now, based on your experience as an expert, you're telling me that the scaffold, even though it's lashed down with that ropedid I show you the type of rope that might be involved in this deal? He said he thought it might be a quarter inch, is this something that's
A. Yes, sir, that's called a sash cord. That's a braided cotton line.
Q. Can that securely hold a scaffold to the tubing that was in question?
A. No, it can't because you can't lash it that way.
Q. Well, you can tie it, Dr. Miller, can't you?
A. Yeah, but you have, in order to fix the scaffold board to the pipe, you have to go around the scaffold board which is forty-eight inches plus ten inches of the height of the board, and then you go around the pipe. Well, when you have fifty-eight inches of free length, then you cannot depend on this to be tight.
Q. In other words
A. You can't make it tight.
Q. in your opinion, it will definitely give some, it will shift?
A. Yes.
Q. Is that what your telling us?
A. You can't tie it that tight, not with human hands.
Considering this evidence, we must conclude that Mallard violated the safety standards incorporated in OSHA and ANSI.
We must next determine if either OSHA or ANSI govern the working conditions aboard Rig 27. The parties stipulated that the rig was an inland drill barge, and although no evidence was offered to show whether the barge was inspected by the Coast Guard, the parties, by admission in their briefs, acknowledge that Rig 27 is an inland uninspected vessel.
Mallard, in its brief, correctly points out that the Coast Guard regulations do not apply. It states, "An inland barge such as Rig No. 27 is not inspected by the Coast Guard and does not fit any of the three categories of mobile offshore drilling units" contained in 46 C.F.R. 107. However, Mallard is in error when it claims that the OSHA regulations do not apply to inland barges.
Dr. Miller testified as to the existence of a memorandum of understanding between OSHA and the Coast Guard whereby OSHA assumes responsibility for the regulation of working conditions of employees aboard uninspected vessels. An "uninspected vessel" is a term used to denote that a vessel is not subject to the Coast Guard's inspection and certification authority. 46 U.S.C. § 2101(43).
OSHA possesses statutory authority to regulate the working conditions aboard uninspected vessels. Donovan v. Red Star Marine Services, Inc., 739 F.2d 774 (2nd Cir.1984), cert. denied, 470 U.S. 1003, 105 S.Ct. 1355, 84 L.Ed.2d 377 (1985); Reich v. Nelson, 843 F.Supp. 20 (E.D.Pa.1994). See also In re Inspection of Norfolk Dredging Co., 783 F.2d 1526 (11th Cir.1986), cert. denied, 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986).
Mallard contends that courts have rejected the application of OSHA regulations to vessels. It cites as authority the cases of Donovan v. Texaco, 720 F.2d 825 (5th Cir.1983), Clary v. ODECO, 609 F.2d 1120 (5th Cir. 1980), and National Marine Service, Inc. v. Gulf Oil Co., 433 F.Supp. 913 (E.D.La. 1977), aff'd, 608 F.2d 522 (5th Cir.1979). Both Donovan v. Texaco and the Clary case stand for the proposition that OSHA regulations *437 do not apply to the working conditions of "blue-water" seamen, that is, seamen on vessels navigating the high seas. National Marine Service, the third case relied upon by Mallard, is a case decided before Red Star and Norfolk Dredging, and before the issuance of the memorandum of understanding referred to by Dr. Miller.
Furthermore, the vessels involved in those cases would of necessity be subject to inspection by the Coast Guard, and the memorandum of understanding which sanctions OSHA's regulations of uninspected vessels serves to exclude OSHA's jurisdiction over inspected vessels. See Donovan v. Red Star Marine Services, Inc., supra, at page 778 where footnote 2 provides:
In accordance with a "Memorandum of Understanding" signed by the Commandant of the Coast Guard and the Assistant Secretary for Occupational Safety and Health, Department of Labor, the Secretary has taken the position, that "the Coast Guard has issued comprehensive standards and regulations concerning the working conditions of seamen aboard inspected vessels," and that OSHA may not enforce its regulations with respect to "seamen" aboard inspected vessels.
It was established at trial by uncontradicted evidence that a violation of OSHA regulations occurred.
Watterson was an intended beneficiary of the OSHA regulations, and his injury was of the type against which the regulations were intended to protect. The requirement of securing scaffolds to prevent movement is to protect workers on the rig, and Watterson was a floorhand working on the rig at the time of the accident. The purpose of securing scaffolds to prevent movement is to prevent falls by crew members using the scaffolds, and Watterson's injuries were a result of such a fall.
Because we find that the OSHA regulations are intended for the benefit of crew members, Section 53 of the FELA bars a consideration of Watterson's contributory negligence. We find no merit to the argument that OSHA renders Section 53 inoperable in this case. It has been held that 29 U.S.C. § 653(b)(4) of OSHA serves to prohibit the use of evidence of an OSHA violation to establish negligence per se under the FELA.[1] See Ries v. National R.R. Passenger Corp., 960 F.2d 1156 (3rd Cir.1992). We disagree with that holding and find that the more persuasive view is that articulated by the United States First Circuit in Pratico v. Portland Terminal Co., 783 F.2d 255 (1st Cir.1985). The Pratico court found that § 653(b)(4) presented "no obstacle to treating OSHA regulations as safety statutes under § 53 of FELA," 783 F.2d at p. 268, and necessarily, the Jones Act. This conclusion comports with the plain language of Section 53, the rationale of Kernan, supra, and the Fifth Circuit jurisprudence cited with approval in Pratico.[2]
The Pratico court found that applying the doctrine of negligence per se to violations of OSHA regulations does not create any new rights, duties, or liabilities, as proscribed in § 653(b)(4) of OSHA. The court explained:
The intent of Congress in enacting § 653(b)(4) was to prevent the creation of new tort remedies where none had previously existed. The elimination of contributory negligence for violation of a safety statute was a basic facet of the remedy provided by FELA long before OSHA was enacted. In fact, the legislative history of § 53 indicates that Congress considered this elimination of contributory negligence to simply be a reflection of the common law doctrine of negligence per se: "The effect of the provision is to make a violation of such a statute negligence per se on *438 the part of the employer. The courts of some states have held this as a principle of common law. Other states enacted it into statute." H.R.Rep. No. 1386, 60th Cong., 1st Sess. 6 (1908). As we found earlier, allowing OSHA regulations to be given effect in other statutory or common law actions is not the same as allowing the regulations, standing alone, to create new actions.
783 F.2d at p. 268. Accordingly, the judgment of the trial court is modified to delete the assessment of 85% fault to Watterson and to assign 100% fault to Mallard.

DAMAGES
The trial court awarded Watterson general damages in the amount of $250,000 for pain and suffering and past and future wage loss in the amount of $248,508. It found that the plaintiff had failed to prove future medical expenses. The trial court disallowed the plaintiff's claims for loss of consortium and punitive damages, citing Jenkins v. Kerr-McGee Corp., 613 So.2d 1097 (La.App. 3d Cir.), writs denied, 616 So.2d 701, 702 (La. 1993). Plaintiff does not assign error to these rulings nor does he brief these issues; we, therefore, consider them to be abandoned and will not address these issues.
In its second assignment of error, Mallard contends that the trial court abused its discretion by awarding plaintiff a total of $498,508. It suggests that a proper award would be $175,000 in general damages and $153,000 in lost wages. Watterson, on the other hand, seeks an increase in general damages to $400,000.
It is well settled that the trier of fact has much discretion in awarding damages. La.C.C.Art. 2324.1 Recently in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), our Supreme Court characterized this discretion as "`great' and even vast." In determining whether the fact finder has abused its much discretion in its award, the reviewing court must first examine the individual circumstances of the particular case before resorting to prior awards for guidance. Reck v. Stevens, 373 So.2d 498 (La. 1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
On January 8, 1991, Watterson underwent a diskectomy, performed by Dr. Leoni, and a two level fusion, performed by Dr. Schutte, at L4-5 and L5-S1. He was hospitalized for seven days. The plaintiff continued to have pain and Dr. Schutte was of the opinion that the fusion at L4-5 was not solid.
Plaintiff went to see Dr. Cobb about the pain and Dr. Cobb confirmed that the L4-5 fusion was not solid. On May 6, 1992, Dr. Cobb performed surgery to regraft the L4-5 level.
Plaintiff was hospitalized until May 9. Thereafter, he continued to have pain which gradually subsided somewhat, and on September 30, 1992 he began therapy three times a week. This continued until November 11, 1992, when he was released by Dr. Cobb. He still suffered pain off and on, and Dr. Cobb was of the opinion that he would never be pain free but would suffer mild pain from time to time.
Dr. Cobb released the plaintiff to medium level work which he described as limiting plaintiff to a maximum lifting of 50 lbs. at any one time infrequently, 20 lbs. frequently, and 10 to 15 lbs. continuously. Plaintiff was to avoid vibrations, unprotected heights, and excessive vehicular exposure, and he was limited to walking, sitting and standing no more than three or four hours in any eight hour period. He reached maximum medical care on November 11, 1992; that is, no further medical treatment would improve his condition.
After a careful review of the record in light of the well established standard of review, we find that the trial court's award of $250,000 in general damages was not an abuse of discretion, and we therefore reject the request to increase by the plaintiff and to decrease by the defendant.
Mallard also complains that the award for lost wages is excessive. This contention is without merit. The trial court awarded the plaintiff $248,508 for past and future loss of income. This amount is in line with the calculations provided by Dr. Rice, the economist who testified for plaintiff. *439 However, the judgment rendered in this case failed to give Mallard a credit for maintenance paid to Watterson in the amount of $27,014. This was stipulated to by the parties. The award for lost wages will therefore be reduced to the sum of $221,494.

FOUND
In his last (6th) assignment of error, plaintiff complains of the failure of the trial court to make an award for "found." "`Found' is an admiralty term which describes the element of damages representing the value of the living expenses provided to a seaman by his employer as a condition of employment while aboard ship. Found generally includes expenses for food, lodging and clothing." Frank L. Maraist, Admiralty in a Nutshell 194 (2d ed. 1988). Youn v. Maritime Overseas Corp., supra at p. 1261.
The record in this case is devoid of any evidence concerning a loss of living expenses by plaintiff. The only reference to "found" is in the report of defendant's economist, Dr. Kenneth J. Boudreaux, who gave a present value of future meal loss of $6,368.12. However, he stated that in his opinion, no such award should be made.
There is no merit to this assignment or error.

PREJUDGMENT INTEREST
When as in this case a Jones Act suit is brought under the court's admiralty jurisdiction (tried to a judge), the award of prejudgment interest lies within the sound discretion of the trial judge. Doucet v. Wheless Drilling Company, 467 F.2d 336 (5th Cir.1972); Williams v. Reading and Bates Drilling Co., 750 F.2d 487 (5th Cir.1985).
Mallard in its last assignment of error claims that the trial court erred in awarding interest from date of judicial demand on items of future damages. This challenge is meritorious as it relates to the interest on damages for future losses. Verdin v. C & B Boat Co., Inc., 860 F.2d 150 (5th Cir.1988).
This court has held in three cases that prejudgment interest is not allowed on awards under general maritime law for loss of future earnings and future pain and suffering. Smith v. Flotation Services, Inc., 596 So.2d 343 (La.App. 3d Cir.1992); Savoie v. McCall's Boat Rentals, Inc., 491 So.2d 94 (La.App. 3d Cir.), writs denied, 494 So.2d 334, 542 (La.1986) and Banks v. Magnolia Marine Transport Company, 617 So.2d 192 (La.App. 3d Cir.), writ denied, 620 So.2d 876 (La.1993).
Three other Third Circuit cases have held, however, the denial of prejudgment interest is limited to future non-economic losses. McFarland v. Justiss Oil Co., 526 So.2d 1206 (La.App. 3d Cir.1988); Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3d Cir.1992), writ denied, 610 So.2d 819 (La. 1993); and Gray v. Texaco, Inc., 610 So.2d 1090 (La.App. 3d Cir.1992), writs denied, 616 So.2d 686, 687 (La.1993).
In maritime cases, prejudgment interest is ordinarily awarded from the date of loss. Reeled Tubing, Inc. v. M/V Chad G., 794 F.2d 1026 (5th Cir.1986).
The amount of past and future damages is not so easily calculated because neither the trial court not this court has attempted to proportion the award between past and future damages.
It would present an undue burden on the litigants and the court to remand this case, so we somewhat arbitrarily, and in order to finalize the judgment in this case without remand, adopt the reasoning of this court in Banks v. Magnolia Marine Transport Company, supra, and conclude that the trial court properly exercised its discretion in the present case. The trial judge could have awarded prejudgment interest on past damages from the date of the accident (October 23, 1990) as opposed to suit date (April 23, 1991) and could have denied post-judgment interest altogether. By making all damages subject to interest, but dating only from judicial demand, the result is fair and certainly not an abuse of the trial court's discretion.

DECREE
For the foregoing reasons, the judgment of the trial court is modified to assign 100% fault to Mallard Bay Drilling. The judgment *440 is amended to reduce the damages awarded for lost wages to the sum of $221,494. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally to the parties.
AFFIRMED AS MODIFIED AND AMENDED.
DOUCET, J., dissents and assigns reasons.
GUIDRY, J., dissents for the reasons assigned by DOUCET, J.
DOUCET, Judge, dissenting.
It is well settled that in maritime actions (Jones Act cases), the rights accorded seamen against their employers are the same as those afforded railroad employees under the Federal Employers' Liability Act (FELA). Further, under Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) and 45 U.S.C. sec. 53 (part of FELA) a court is barred from considering the contributory negligence of a seaman in those instances where an employer violates a statute enacted for the safety of employees.
In this case the scaffold from which plaintiff fell was found to be in violation of an OSHA safety standard [29 C.F.R. sec. 1910.28(a)(11)] in that, although tied on both ends, it was able to "shift slightly" thereby contributing to Mr. Watterson's fall. Thus, the linchpin of this case is whether OSHA safety standards (regulations) are included under FELA as statutes enacted for the safety of employees and thus, does the violation, by an employer of an OSHA regulation, which results in injury to an employee, bar a court from considering the contributory negligence of the injured employee?
Part of OSHA, specifically 29 U.S.C. sec. 653(b)(4) provides as follows:
Nothing in this chapter shall be construed to supercede or in any manner affect any workman's compensation law or to enlarge or diminish or affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of or in the course of, employment.
The majority, relying on Pratico v. Portland Terminal Co., 783 F.2d 255 (1 Cir.1985), finds "no obstacle to treating OSHA regulations as safety standards under sec. 53 of FELA". I disagree and find the reasoning and outcome in Ries v. National Railroad Passenger Corporation, 960 F.2d 1156 (3 Cir. 1992), to be more compelling and, in my opinion, the true intent of Congress in enacting the various statutes. In Ries, supra, at 1161 and 1162, the court stated:
We find the analysis of Pratico to be unpersuasive, since we cannot agree that the only intended effect of section 653(b)(4) was to preclude the creation of a private right of action which would bypass workers' compensation. The First Circuit's analysis defies traditional principles of statutory interpretation which dictate that courts first look at the statute's language and the plain meaning of that language. Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "[O]nly the most extraordinary showing of contrary intentions from [legislative history] would justify a limitation on the `plain meaning' of the statutory language." Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984). See also Immigration and Naturalization Serv. v. Elias-Zacarias, [502] U.S. [478], [482], 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) ("In construing statutes, `we must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used.'") (citation omitted); GTE Sylvania, 447 U.S. at 108, 100 S.Ct. at 2056 ("Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). Furthermore, the Supreme Court has counseled against giving too much weight to "the contemporaneous remarks of a single legislator who sponsors a bill," id. at 118, 100 S.Ct. at 2061, much less a non-legislator such as the Solicitor of Labor.
Section 653(b)(4) clearly states that OSHA shall not "enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities *441 of employers and employees." If a violation of an OSHA regulation could constitute negligence per se and bar contributory negligence under the FELA, it would be almost axiomatic that the effect would be to "enlarge or diminish or affect" the statutory duty or liability of the employer. Even if we agreed with Ries' argument that imposing negligence per se for an OSHA violation would not "enlarge" employers' liability, since it merely defines an existing duty, we are hard pressed to say that it would not "affect" liability. Furthermore, a bar of contributory negligence which transforms Amtrak's loss from a $9,282.50 verdict to a $37,130 verdict clearly would "affect," if not "enlarge," the employer's liability. In short, it defies reason to construe section 653(b)(4) as only precluding private actions which would bypass workers' compensation. Had Congress intended such a result, it would not have drafted section 653(b)(4) in such sweeping terms.
Even the concurring judge in Ries, supra, agreed with the majority. At 1165 he states:
I agree with the result reached by the majority, and with its reasoning to the extent that the plain meaning of OSHA, 29 U.S.C. sec. 653(b)(4), precludes a finding of negligence per se and a barring of contributory negligence in a FELA action.
I, too, share the foregoing conclusion. Accordingly, I dissent.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] 29 U.S.C. § 653(b)(4) provides:

Nothing in this chapter shall be construed to supersede or in any manner affect any workman's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of employment.
[2] Dixon v. International Harvester Co., 754 F.2d 573 (5th Cir.1985); Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231 (5th Cir.1982); Melerine v. Avondale Shipyards, Inc., 659 F.2d 706 (5th Cir.1981); Lowe v. General Motors Corp., 624 F.2d 1373 (5th Cir.1980).