Juan CEJA, Plaintiff-Appellant,

v.

MIKE HOOKS, INC.,
Defendant-Appellee.

No. 82–3030
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1982.

Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Vincent J. Glorioso, Jr., New Orleans, La., for plaintiff-appellant.

Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, La., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

Plaintiff-appellant Ceja appeals the judgment entered by the district court below after a non-jury trial of his personal injury claims for unseaworthiness, and under the Jones Act, 46 U.S.C. § 688, for negligence.

## FACTS

On June 24, 1978, appellant Ceja was engaged as a deckhand in towing operations aboard appellee's vessel. In the course of these operations, Ceja had secured his vessel's tow line to another, beached vessel. Ceja, although instructed to utilize a more secure combination knot, was unable to do so due to the inadequate length of the existing tow line. Instead, he employed a less secure half-hitch knot.

As the vessel began to maneuver, Ceja remained standing approximately three feet from the towing bit in the stern. A loud noise was heard and appellant was hit by the line, sustaining the injuries to his left arm and abdomen which are the subject of this appeal.

The more precise circumstances surrounding appellant's injury were disputed at trial, occasioning the following factual determinations by the district court. The court found that the line which struck Ceja had come loose from the tow bit, rather than, as appellant contended, having torn loose as a result of increased tension placed on the line. Additionally, the court found that Ceja had been repeatedly warned of the dangers of remaining close to the tow bit once towing operations began, including admonitions given to him just moments before the unfortunate accident to move away from the stern of the boat where the tow bit was contained.

### Disposition Below

The district court found that the use of an inadequate line, which prevented appel-

lant from tying a more secure knot, constituted at least "slight negligence" on defendant's part for Jones Act purposes, as well as an unseaworthy condition, citing *Allen v. Seacoast Products, Inc.,* 623 F.2d 355 (5th Cir. 1980).

Although finding appellee liable, the court found appellant substantially negligent:

> Ceja was aware of the necessity of tying a safer knot, yet did nothing to obtain adequate line; he was also aware of the increasing stress on the line. More importantly, however, he disregarded both past and immediate warnings of both the watch boatman and the mate on board to move away from the stern of the ship; instead, he remained in a precariously dangerous position within three feet of the tow bit.

These two factors—appellant's failure to seek or request a longer line and his failure to heed multiple warnings to remain further away from the bit during towing operations—led the trial court to reduce appellant's proven damages by a determination of 75% contributory negligence. Concomitantly, the court denied appellant prejudgment interest "[d]ue to the degree of contributory negligence found." The court also rejected appellant's claim for future lost wages, citing a failure to prove by a preponderance of the evidence that appellant suffered from an inability to work in the future. Finally, to prevent double recovery, the court deducted the maintenance paid from the award for past lost wages.

## ISSUES ON APPEAL

### Contributory Negligence

■■■■ A vessel owner has an absolute duty to furnish a seaworthy vessel, that is a vessel and appurtenances which are reasonably safe and fit for their intended use. *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732 (5th Cir. 1978), *modified on other grounds en banc,* 606 F.2d 524 (5th Cir.

1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). Additionally, under the Jones Act, a vessel owner will be deemed negligent if he fails to exercise reasonable care to maintain a reasonably safe work environment. *See Allen v. Seacoast Products, Inc., supra,* 623 F.2d at 361; *Ivy v. Security Barge Lines, Inc., supra;* Jones Act, 46 U.S.C. § 688. In the immediate case, the appellee's failure to provide an adequate tow line constituted both an unseaworthy condition and negligence so as to impart liability, as correctly found by the court below.

■■■■ In contrast to the broad duty imposed upon a vessel owner to supply a safe work place, the seaman's duty to protect himself is slight. *Bobb v. Modern Products, Inc.,* 648 F.2d 1051, 1056–57 (5th Cir. 1981). Although the seaman has a duty to use reasonable care, this duty is tempered by the realities of maritime employment "which have been deemed . . . to place large responsibility for his safety on the owner." *Mahnich v. Southern S. S. Co.,* 321 U.S. 96, 103, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1944). In *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 431, 59 S.Ct. 262, 266, 83 L.Ed. 265 (1939), the Supreme Court said "seamen are the wards of admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances attending their calling." *See also Cox v. Esso Shipping Co.,* 247 F.2d 629, 635–36 (5th Cir. 1957). Accordingly, assumption of risk is not a defense to any claim for injuries which might befall a seaman engaged in his hazardous employ.[1] *See Mahnich v. Southern S. S. Co., supra; Socony-Vacuum Oil Co. v. Smith, supra; Bobb v. Modern Products, Inc., supra.* Contributory negligence is available to mitigate a vessel owner's liability according to comparative fault, when an injured seaman has been negligent in breaching a duty to act or refrain from acting.[2] *See Comeaux v. T. L. James & Co.,*

1. The defense of assumption of risk comes into play when an injury results from a voluntary

exposure to a known and appreciated danger. *See infra* note 3.

2. The Supreme Court, in *Socony-Vacuum Oil Co. v. Smith,* 305 U.S. 424, 59 S.Ct. 262, 83

666 F.2d 294, 299 (5th Cir. 1982); *Bobb v. Modern Products, Inc., supra; Allen v. Coast Products, Inc., supra,* 623 F.2d at 362.

■ In the immediate case, the trial court based its finding of appellant's contributory negligence upon two factors: 1) his failure to seek or obtain a line of adequate length; and 2) his failure to move away from the dangerous position he maintained near the tow bit, in view of prior and immediate warnings. We hold that the trial court's reliance upon the former factor in this case reflects an impermissible expansion of the limited duties placed upon seamen in the safe performance of their duties.

■■ Generally, a seaman has no duty to find the safest way to perform his work. *Comeaux v. T. L. James & Co., supra,* 666 F.2d at 300; *Spinks v. Chevron Oil Co.,* 507 F.2d 216, 223 (5th Cir. 1975), *clarified,* 546 F.2d 675 (5th Cir. 1977) ("His duty is to do the work assigned, not to find the safest method of work"). Rather, the duty to provide for a safe course of conduct lies primarily with the vessel owner.[3] A sea-

---

L.Ed. 265 (1939), enunciated and explained the application of assumption of risk and contributory negligence in seamen's cases.

The seaman, while on his vessel, is subject to the rigorous discipline of the sea and has little opportunity to appeal to the protection from abuse of power which the law makes readily available to the landsman. His complaints to superior officers of unsafe working conditions not infrequently provoke harsh treatment. He cannot leave the vessel while at sea. Abandonment of it in port before his discharge, to avoid unnecessary dangers of employment, exposes him to the risk of loss of pay and to the penalties for desertion. In the performance of duty he is often under the necessity of making quick decisions with little opportunity or capacity to appraise the relative safety of alternative courses of action. . . .

Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages. There being no defense of assumption of risk where the seaman is without opportunity to use a safe appliance, it seems plain that his choice of a defective instead of a safe one, resulting in injury, does not differ in either the quality of the act or in its injurious consequences, in any practical way, from his correspondingly negligent use of a safe or an unsafe appliance, where its use has contributed to an injury resulting from a breach of duty by the owner. . . . In either case the seaman's negligence is a contributing cause of his injury, without which the ship owner would be liable to the full extent of the damage.

The incongruity and practical embarrassments in the application of a rule that the negligence in the one case bars recovery, while that in the other only reduces the recoverable damages, are evident. The common law is consistent in holding that both contributory negligence and assumption of risk are defenses. But other considerations apart, it seems inconsistent, and an impracticable refinement, to apply the rule for which petitioner contends in a system of law which maintains the comparative negligence rule to the fullest extent. . . .

We think that the consistent development of the maritime law in conformity to its traditional policy of affording adequate protection to seamen through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances will be best served by applying the rule of comparative negligence, rather than that of assumption of risk, to the seaman who makes use of a defective appliance knowing that a safe one is available.

*Id.* at 430–32, 59 S.Ct. at 266 (footnotes omitted).

3. The placement of these disparate duties upon seaman and vessel owner both reflects the realities of maritime work, *see supra* note 2, and avoids injecting elements of assumption of risk in the guise of contributory negligence. As the Tenth Circuit has effectively stated:

The distinction between assumption of risk and contributory negligence in a maritime setting has not always been clearly understood. A seaman may not be denied recovery because he proceeds in an unsafe area of the ship or uses an unsafe appliance in absence of a showing that there was a safe alternative available to him. . . . One court has stated the rule, "no risk that can be reasonably controlled by the ship owner is assumed by the seaman." *Reyes v. Vantage S. S. Co.,* 558 F.2d 238, 244 (5th Cir. 1977). . . .

To determine whether plaintiff was guilty of contributory negligence [the Court] must focus on his actions after he assumed the risk of working with the defective rig since the defense of contributory negligence requires evidence of some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition. *Rivera*

man, therefore, is not contributorily negligent merely because he uses an unsafe tool or appliance or proceeds in an unsafe area of the ship.[4] Only where it is shown that there existed a safe alternative available to him of which he knew or should have known, can a seaman's choice of an unsafe course of action be properly considered in determining whether he was negligent. *Accord Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 682-83 (10th Cir. 1981).

Further enlightenment on this issue is gained from *Bobb v. Modern Products, Inc., supra,* 648 F.2d at 1058 n.5 in which this Court said: "Although *Mahnich v. S. S. Co.* [321 U.S. 96, 103, 64 S.Ct. 455, 459, 88 L.Ed. 561 (1943)] has been cited for the proposition that a seaman has no duty to choose between good and bad equipment, we interpret the Supreme Court's language in that case to mean that providing good equipment in addition to poor equipment does not excuse the owner's failure to provide the safe equipment. That case involved the assumption of the risk defense rather than a contributory negligence defense, and we find that in mitigating damages a jury may consider the seaman's choice of equipment."[5] *Cf. Robinson v. Zapata Corp.,* 664 F.2d 45, 49 (5th Cir. 1981) (where seaman knew of "several simple ways"—well-known and readily available to him—to avoid the unsafe course created by a lack of proper equipment, he had the duty to follow the safe course of conduct); *Hussein v. Isthmian Lines, Inc.,* 405 F.2d 946 (5th Cir. 1968) (where seaman has tools close at hand which could safely perform a task, the seaman has a duty to use them). Even then,

factors such as the youth and inexperience of a seaman should be considered in determining whether a seaman may properly be charged with a duty to select a safe course of conduct from among safe and unsafe alternatives. *See Spinks v. Chevron Oil Co., supra.*

In the case sub judice, there was no showing that appellant had a safe alternative available to him. He had no duty to seek out or obtain a tow line of adequate length when the only one available to him prohibited the safe performance of his work. In holding to the contrary, the trial court erred.

■ On the other hand, the second factor relied upon by the district court in assessing appellant contributorily negligent, appellant's failure to heed multiple admonitions to move away from the dangerous position he maintained near the tow bit, was properly considered. Appellant's failure to act went beyond merely placing himself in a position of danger. *Cf. Bobb v. Modern Products, Inc., supra,* 648 F.2d at 1058–59 (cautioning trial court that the argument that plaintiff was contributorily negligent in placing himself in a position of danger is too closely akin to an impermissible assumption of risk argument); *Williams v. Brasea, Inc.,* 497 F.2d 67 (5th Cir. 1974), *reh'g denied,* 513 F.2d 301 (5th Cir.), *cert. denied,* 423 U.S. 906, 96 S.Ct. 207, 46 L.Ed.2d 136 (1975), *upon remand,* 549 F.2d 977 (5th Cir. 1977) (although seaman was contributorily negligent in placing himself in a dangerous position, this negligence was not the proxi-

---

v. *Farrell Lines, Inc.,* 474 F.2d 255, 257–58 (2d Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 122, 38 L.Ed.2d 55 (1973). The burden of proving that the plaintiff failed to exercise due care is on the defendant. *Nolan v. Greene,* 383 F.2d 814 (6th Cir. 1967); *Mason v. Mathiasen Tanker Industries, Inc.,* 298 F.2d 28, 32 (4th Cir.), *cert. denied,* 371 U.S. 828, 83 S.Ct. 23, 9 L.Ed.2d 66 (1962).

*Joyce v. Atlantic Richfield Co.,* 651 F.2d 676, 682-83 (10th Cir. 1981) (quoting *Tolar v. Kinsman Marine Transit Co.,* 618 F.2d 1193, 1195–96 (6th Cir. 1980)).

4. If, however, the unsafe condition is one which the seaman had a duty to rectify—as one of his

own creation or otherwise—he may be deemed negligent in any injury thereby resulting. *See, e.g., Kratzer v. Capital Marine Supply, Inc.,* 645 F.2d 477, 481 (5th Cir. 1981); *Hlodan v. Ohio Barge Line, Inc.,* 611 F.2d 71, 74 (5th Cir. 1980); *McBride v. Loffland Bros. Co.,* 422 F.2d 363 (5th Cir. 1970).

5. The *Bobb* panel's cautionary analysis of *Mahnich's* sweeping language, as limited to its context, can be applied as well to the seemingly broad statements appearing in *Spinks v. Chevron Oil Co.,* 507 F.2d 216 (5th Cir. 1975), *clarified,* 546 F.2d 675 (5th Cir. 1977), and *Cox v. Esso Shipping Co.,* 247 F.2d 629 (5th Cir. 1957).

mate cause of the injury because of an intervening unforeseeable negligent act). As found by the trial court, appellant had been warned repeatedly in the past and immediately before his accident that the position in which he remained was dangerous and that he should move further away from the tow bit. In light of the record before the court, we cannot say that the court erred in reaching these findings of fact and in concluding that appellant was negligent.[6]

■ Accordingly, ·we reverse the trial court's determination of 75% contributory negligence and remand for an assessment consistent with the principles enunciated herein. In so doing, we caution the court to set out its findings, including the factors it considers in reaching its determination of comparative fault.[7]

### Prejudgment Interest

The district court denied plaintiff prejudgment interest because of the degree of contributory negligence found. Given our reversal of the trial court's finding on contributory negligence, we reverse and remand this derivative finding to the court below. Absent strong and persuasive findings by the district court, however, we doubt that prejudgment interest may properly be denied.

■ We have stated the law regarding prejudgment interest:

As a general rule, prejudgment interest should be awarded in admiralty cases— not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled. Discretion to deny prejudgment interest is created only when there are "peculiar circumstances" that would make it inequitable for the losing party to be forced to pay prejudgment interest. See, e.g., Socony Mobil Oil Co. v. Texas Coastal & International, Inc., 559 F.2d 1008, 1014 (5th Cir. 1977); American Zinc Co. v. Foster, 441 F.2d 1100, 1101 (5th Cir.), cert. denied sub nom. Ingalls Shipbuilding Division of Litton Systems, Inc. v. American Zinc Co., 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971). . . .

If the trial court *explicitly denies* prejudgment interest (rather than merely omitting any reference to it), then this is based on a factfinding that peculiar circumstances exist; the factfinding is sometimes explicitly set out, with the peculiar circumstances detailed in the court's findings of fact and conclusions of law, or it may be implicit in the denial of prejudgment interest without a listing of the circumstances. If the trial court was not clearly erroneous in finding that peculiar circumstances exist, then its denial of prejudgment interest was discretionary. In most instances, we have not found such a denial to be an abuse of discretion. . . . In a few instances, the

---

6. As in the usual case, the standard of review of the district court's fact findings is whether they are clearly erroneous, *i.e.,* whether "the reviewing court is left with the definite and firm conviction that a mistake has been committed and that the district court could not permissibly find as it did." *Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 727–28 (5th Cir. 1980). This case does not fall within the narrow exception for a greater scope of review, *see Cooper v. Department of Navy,* 594 F.2d 484, 486 (5th Cir.), *cert. denied,* 444 U.S. 926, 100 S.Ct. 266, 62 L.Ed.2d 183 (1979), for cases submitted entirely by deposition, as argued by appellant. Appellant herein testified at trial, occasioning critical credibility determinations to which we are not privy. Hence we reject appellant's argument.

7. The district court opinion before us is silent as to appellant's inexperience or youth at the

time of the injury, although in their briefs to this Court both parties argue these factors from the evidence before the trial court and their relevance to a finding of contributory negligence. We agree that these factors must be considered in assessing the degree to which appellant was at fault.

In light of our disposition, we do not reach appellant's contention that, in any event, a finding of 75% contributory negligence was erroneous, when the facts of the case are viewed within the general context of the laws protective of seamen as wards of admiralty. The development upon remand of clear and explicit findings with regard to contributory negligence should permit us to address this issue, should it be renewed before us again on appeal.

appellant has convinced this court that an explicit denial of prejudgment interest was an abuse of discretion. . . . *Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 728 (5th Cir. 1980) (footnotes and citations omitted). *See also Todd Shipyards Corp. v. Turbine Service, Inc.,* 674 F.2d 401, 415 (5th Cir. 1982); *Pluyer v. Mitsui O. S. K. Lines, Ltd.,* 664 F.2d 1243, 1248 (5th Cir. 1982); *International Paint Co. v. M/V Mission Viking,* 637 F.2d 382, 386 (5th Cir. 1981).

On remand, the issue for the trial court is whether the degree of contributory negligence it finds gives rise to a "peculiar circumstance" that would make it inequitable to apply the usual rule granting prejudgment interest. In the proper case, a high degree of contributory negligence might well be considered by the district court in invoking its discretion to deny prejudgment interest. We question, however, whether appellant's negligent action in this case, as discussed herein, is of a sufficient magnitude to be considered a "peculiar circumstance." [8] Accordingly, we reverse and remand the trial court's denial of prejudgment interest for a reconsideration of that issue.

### Maintenance Paid

■ Appellant argues that the trial court erred in using the motive of preventing double recovery [9] to offset the award of past lost wages with the amount of maintenance [10] paid. On the basis of our recent decision, in *Morel v. Sabine Towing &*

*Transportation Co.,* 669 F.2d 345 (5th Cir. 1982), we agree.

In *Morel,* appellant shipowner had appealed the district court's award of maintenance to an injured seaman during a period of compensated vacation. The *Morel* panel, viewing compensated vacation as a method of deferred wage payment and hence as "earned wages," held that the district court's award of both damage elements was proper as wages were "separate and distinct from maintenance." *Id.* at 347. The Court elaborated:

> Maintenance is the equivalent of the food and lodging to which a seaman is entitled while at sea. Maintenance, and its necessary companion cure, are hallowed rights of seamen who are injured or become ill while in the service of a ship. . . . Maintenance is neither a substitute for wages nor is it to be considered in lieu of a seaman's wages, in whole or in part.

*Id.* at 346. We have concluded therefore, that absent an "explicit contractual provision specifying that . . . wages [are] to be deemed a substitute for maintenance,[11] there is no basis for crediting such earned wages against the vessel owner's maintenance obligation." *Id.* (quoting *Shaw v. Ohio River Co.,* 526 F.2d 193 (3d Cir. 1975)).

Finding the district court's deduction of maintenance paid from past lost wages erroneous, we reverse. The district court will need to recalculate appellant's damages without any deductions made for maintenance paid.

8. No other peculiar circumstances have been cited by the district court or are apparent from the record which would permit the exercise of its limited discretion not to award prejudgment interest. The district court may find, on remand, however, other factors which might justify a denial of prejudgment interest.

9. The parties stipulated that appellant's monthly wage was $1,197.59. The court deducted the maintenance paid from the lost wages over the 29⅓ month disability period and awarded $21,-610.54 in lost wages. This sum when added to the court's general damage award of $100,000 constituted the court's damage award prior to mitigation by the degree of contributory negligence found.

10. "Maintenance" is the cost of the basic necessities incurred, usually considered to be food, shelter and clothing. "Cure" is the shipowner's obligation to provide medical services to the injured seaman. At trial, counsel stipulated that $9,926 had been paid in maintenance to appellant during the 29⅓ month disability period for which an award of lost wages was to be made. This period was determined without dispute as the date appellant reached maximum cure.

11. *Morel* raised and left unanswered the question of whether such a contractual provision would be valid.

*Denial of Future Wage Losses*

The district court denied appellant's claim for future wage losses "finding that plaintiff did not prove by a preponderance of the evidence that he suffers from an inability to work in the future." This factual determination is subject to review under the "clearly erroneous" standard. *See Noritake v. M/V Hellenic Champion, supra.* Upon our review of the record, we cannot say that the court below erred in its conclusion: appellant's partial injury to his non-dominant arm did not result in an inability to perform future work.

SUMMARY

The district court's judgment must be reversed and remanded as it pertains to contributory negligence and prejudgment interest. The court's determination of past wage losses is vacated with instructions to recalculate its award of compensatory damages without regard to any maintenance paid. The judgment in other respects stands.

AFFIRMED IN PART AND REVERSED IN PART.