676 So.2d 182 (1996)
Jaral LYONS, Sr.
v.
FLEET OPERATORS, INC.
No. 96-CA-0148.
Court of Appeal of Louisiana, Fourth Circuit.
June 5, 1996.
Rehearing Denied July 26, 1996.
*184 Lawrence D. Wiedemann, John H. Denenea, Jr., Wiedemann & Wiedemann, New Orleans, for Plaintiff-Appellant Jaral Lyons.
Mark Fierro, Benjamin H. Farrow, V, Evans & Co., New Orleans, for Defendant-Appellee Fleet Operators, Inc.
Before BARRY, KLEES and CIACCIO, JJ.
KLEES, Judge.
Plaintiff Jaral Lyons appeals the trial court's judgment dismissing his maritime personal injury suit. After reviewing the record, we reverse.
The plaintiff was injured on October 7, 1993, aboard the M/V SUSAN M, a one hundred foot utility vessel. At the time of the accident, plaintiff had been employed for four years as a boat captain by defendant Fleet Operators, Inc. Captain Lyons, who was fifty-eight years old at the time of his injury, has worked on vessels for well over forty years. A lifelong resident of Chauvin, Louisiana, Lyons dropped out of school at age eleven to go to work on his father's shrimp boat and began operating oil field vessels at the age of eighteen. He has been married for forty-two years to Jeanette Lyons, and they have seven children.
Prior to the incident on October 7, 1993, plaintiff had no problems with his back or legs. In fact, in his long history of working aboard vessels, he has needed medical attention only twice: once when he broke his foot and returned to work in a cast; and again when he was discovered to have a hernia on a pre-employment physical exam, underwent surgery, and returned to work after a normal recovery period.
On October 7, 1993, the M/V SUSAN M, crewed by Captain Lyons, an engineer and a deckhand, was serving as a standby vessel *185 for a Murphy Oil offshore drilling platform. In this capacity, the vessel remained close to the rig at all times in order to get the drilling crew off the rig if an emergency arose, and also transported the drilling crew to the shore and back for the regular weekly crew changes. On the day in question, the M/V SUSAN M was standing by, without power, tied off a short distance from the platform. When it came time to onload the drilling crew for the crew change, Captain Lyons discovered that he could not start the starboard engine in the twin engine vessel. Although he was able to start the port engine, he knew it was unsafe to attempt to take the vessel from the platform to the shore on one engine. After discovering that a defective starter in the starboard engine was the problem, Captain Lyons decided to remove the starter from the port engine after that engine was already running, and then replace the inoperable starter with the good one, thereby being able to start the starboard engine. There were no spare starters on board.
Because the port-side starter was in a location that permitted access by only one person, Captain Lyons was required to lift the one hundred pound starter with the engine running using a non-traditional lifting position, and then carry it to where the engineer could assist him. Plaintiff performed this duty himself because he was more experienced at this type of repair work than the much younger engineer, and he believed the engineer was not capable of doing the job as well as he. When he lifted the port-side starter out, plaintiff felt a pop in his back. He completed the task and made the crew change. However, he immediately began to experience back and leg pain which got progressively worse. After completing his fourteen-day shift, plaintiff sought medical treatment. He was diagnosed with inoperable three level disc disease and a permanent residual disability of the spine of 10-15%. Plaintiff was cautioned by his treating physician not to lift over twenty-five pounds or to engage in activities that would require him to stand or sit in one position for more than forty-five minutes at a time. His continuing pain and these restrictions have prevented plaintiff from returning to work.
Plaintiff filed this maritime action against Fleet Operators, Inc. (his employer and the vessel owner) in state court under the Saving to Suitors Act, 28 U.S.C. § 1333(1), alleging Jones Act negligence and unseaworthiness of the M/V SUSAN M. The case was tried without a jury. On October 31, 1995, the trial court rendered judgment dismissing plaintiff's case. According to his written reasons for judgment, the trial judge found that plaintiff failed to prove the causation necessary to recover under either the Jones Act or the general maritime law. Plaintiff now appeals this judgment.

Liability:
Our review of the record reveals that the trial judge committed manifest error in failing to find that the vessel was unseaworthy and that this unseaworthiness was a proximate cause of plaintiff's injury. With regard to unseaworthiness, this court has stated:
To be considered seaworthy, a vessel and its appurtenances must be reasonably suited for the purpose or use for which they were intended. Johnson v. Offshore Exp., Inc., supra. [845 F.2d 1347 (5th Cir.1988)] An absolute and non-delegable duty is imposed on the shipowner to furnish a vessel reasonably safe and fit for its intended purpose. Webb v. Dresser Industries, 536 F.2d 603 (5th Cir.1976), cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572 (1977). Any condition rendering the vessel unfit for her intended use makes the vessel unseaworthy. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Unseaworthiness may arise from the employment of an unsafe method of work such as the shipowner's failure to provide adequate equipment for the performance of an assigned task or necessary safety equipment. Vargas v. McNamara, 608 F.2d 15 (1st Cir.1979).
Mistich v. Pipelines, Inc., 609 So.2d 921, 931 (La.App. 4th Cir.1992), writ denied, 613 So.2d 996 (La.1993), cert. den. 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993); overruled on other grounds by Bridgett v. Odeco, Inc., 93-1536, 94-0112, p. 1254 (La.App. 4th *186 Cir. 12/15/94); 646 So.2d 1249. In Lee v. Pacific Far East Line, Inc., 566 F.2d 65 (9th Cir.1977), cited by the trial court, the federal Ninth Circuit held that the duty to provide a seaworthy vessel includes maintaining a ship's equipment in proper working condition. Therefore, the failure of a piece of equipment under proper and expected use is sufficient to establish unseaworthiness. Id. at 67 (Citations omitted). In Lee, a ship's refrigerator maintenance man was injured when he attempted to turn a stuck coolant valve.
In the instant case, the preponderance of the evidence established that the failure of the starter rendered the M/V SUSAN M totally inoperable because it would have been unsafe to take it to shore powered by only one engine. The plaintiff testified to this fact; moreover, Ashley Galloway, the owner of Fleet Operators, Inc., admitted that the vessel could not be safely operated on one engine and that Captain Lyons would have been negligent if he had attempted to do so.
Captain Lyons testified that he had had starters break down on vessels approximately twelve times in his career. Mr. Galloway testified that, although Fleet Operators used to carry spare starters on its twin engine vessels such as the M/V SUSAN M, it had discontinued the practice because the crew members would allow the starters to sit around and perhaps corrode and then would not turn them in as instructed. Mr. Galloway also admitted that although a spare starter was not provided on the M/V SUSAN M, one was still being provided on other types of vessels. Finally, Mr. Galloway stated that Fleet Operators had a contractual obligation to Murphy Oil, the platform owner, to have a fully operational vessel on standby in the case of a platform emergency. Under the circumstances, we conclude that the failure of the starter coupled with the lack of a spare starter available to the crew of the M/V SUSAN M constituted unseaworthiness.
The standard of causation in an unseaworthiness action is proximate cause. To establish the requisite proximate cause, the plaintiff must prove that the unseaworthy condition "played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Brister v. A.W.I., Inc., 946 F.2d 350, 355 (5th Cir.1991) (Citations omitted). In the instant case, the trial judge held that plaintiff Lyons failed to prove that the vessel's unseaworthiness, if any, was the proximate cause of his injury. The trial judge found that it was not the failure of the starter, but rather Captain Lyon's decision to undertake repairs and the method of such undertaking, which caused his injury.
In view of the evidence, we find this conclusion of the trial judge to be manifestly erroneous. Captain Lyons testified that he decided to replace the starter himself because he was more experienced than the engineer in doing so. The trial judge noted that Captain Lyons would have had to remove the defective starter even if a spare starter was present. However, the trial judge apparently ignored the fact that the plaintiff would not have had to remove the starter from a running engine, which he testified was more difficult to do.
Assumption of the risk is not a viable defense in a seaman's case because a seaman must accept, without protest, and without critical examination, the working conditions and appliances presented as part of his employment. Marchese v. Moore-McCormack Lines, Inc., 525 F.2d 831 (2nd Cir.1975). It is not even a defense when the seaman knowingly uses a defective appliance instead of performing his duty in a way he knows to be safe. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Movible Offshore v. Ousley, 346 F.2d 870 (5th Cir.1965). A seaman's duty is to do the work assigned, not to find the safest way to perform his work. See Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir.1982).
In Ceja, the plaintiff was working as a deckhand in a towing operation and was specifically instructed to utilize a combination knot in tying off to a beached vessel. He had been repeatedly warned of the danger of remaining too close to the tow bit during operations. The line that the plaintiff was *187 using was too short to make the prescribed combination knot, and plaintiff elected to use instead a half-hitch knot. As pressure was placed on the tow line, it came loose and struck and injured the plaintiff. The district court denied recovery to the plaintiff, concluding that the accident was caused solely by plaintiff's negligence in (1) his failure to seek or obtain a line of adequate length; (2) his failure to move away from the dangerous position he maintained near the tow bit, in view of prior and immediate warnings. The appellate court, in reversing the district court, totally rejected the first conclusion and cautioned the district court on remand that the second conclusion was "too closely akin to an impermissible assumption of the risk argument". Id. at 1195.
In the instant case, we conclude that the trial court committed manifest error in failing to find sufficient proof of causation on the plaintiff's unseaworthiness claim. There is no question that the plaintiff's back problems were caused by his lifting of the starter. We conclude that the unseaworthy condition of the vessel was the proximate cause of plaintiff's injury.
In our view, the same facts which render the defendant liable for unseaworthiness of the vessel in this case also establish the defendant's liability as an employer for negligence under the Jones Act. In a Jones Act case, evidence of the "slightest negligence" is sufficient to sustain a finding of liability; moreover, the plaintiff's burden to show causation is "featherweight." Watterson v. Mallard Bay Drilling, Inc., 93-1494, p. 434 (La.App. 3rd Cir. 10/12/94); 649 So.2d 431, writ den., 94-2769 (La 1/27/95); 650 So.2d 241, cert. denied, ___ U.S. ___, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995), citing Johnson v. Offshore Express, Inc., 845 F.2d 1347 (5th Cir.1988), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988). The duty owed by an employer to a seaman is so broad that it encompasses the duty to provide a safe place to work. Spinks v. Chevron Oil Co., 507 F.2d 216 (5th Cir.1975). On the other hand, a seaman's duty to protect himself is "slight". Id.
In the instant case, Mr. Galloway's testimony established that Fleet Operators had discontinued the practice of carrying spare starters on vessels such as the M/V SUSAN M because the personnel were not following the proper procedure in handling the starters. The preponderance of the evidence also established that it would be unsafe to operate the M/V SUSAN M with one engine. The plaintiff's testimony indicated that the failure of a starter is an infrequent, but not unexpected, occurrence. Under the circumstances, we conclude that the lack of a spare starter in this case amounted to Jones Act negligence on the part of the defendant. Moreover, as the burden of proving causation in a Jones Act claim is less onerous than in an unseaworthiness claim, and assumption of the risk is not a viable defense, we find that plaintiff has proved, for the same reasons given above, that his injury was the result of defendant's negligence. The trial judge's contrary conclusion is manifestly erroneous under the facts of this case.

Damages
Our decision to reverse the trial court's finding with regard to liability requires us to assess damages based on the record. The deposition of Dr. Adatto, plaintiff's treating physician, was the only medical testimony introduced into the record. Dr. Adatto opined that plaintiff's pain is caused by three-level disc disease which is presently inoperable because of statistically poor results reported by orthopaedic surgeons in multi-level disc procedures. However, Dr. Adatto stated that surgery might be warranted in the future if plaintiff's symptoms get worse. According to Dr. Adatto, the plaintiff has a 10% to 15% permanent disability of the spine, with or without surgery. Dr. Adatto advised the plaintiff not to return to work. He also cautioned the plaintiff not to engage in any activity involving lifting more than twenty-five pounds, or repetitive stooping, bending, squatting or climbing. The plaintiff was also told not to engage in any activities that would require him to stand or sit in one position for more than forty-five minutes at a time.
*188 The plaintiff testified that all four doctors who examined him, including Dr. Cenac, who examined plaintiff at the request of defendant, told him that he could not go back to work. The plaintiff testified that he has continual pain in his back, causing him to have trouble walking and standing. He also gets frequent "Charley horses" in his feet and legs. Plaintiff stated that he takes both ibuprofen and prescription pain medication twice a day.
The plaintiff's wife, Jeanette Lyons, testified that the plaintiff had no health problems prior to this accident. She stated that the plaintiff has trouble sleeping and takes pain medicine every day. Mrs. Lyons also stated that she does all the household chores, including taking out the garbage, and that her husband is unable to stand long enough even to finish washing the dishes. Mrs. Lyons went to work for the first time in her life in May of 1994 in order to help support herself and her husband, as all their children are now grown. She works thirty-seven hours per week as a cook in a restaurant. Mrs. Lyons stated that her husband drives her to work and occasionally goes out with her to play bingo.
In making the initial award of damages at the appellate level, this Court is not limited to an award of either the lowest or highest amount that we would affirm; rather we set the award in an amount which is just compensation for the damages revealed by the record. Thompson v. Louisiana Department of Transportation, 93-1294 (La.App. 3 Cir. 6/29/94), 639 So.2d 864, 871, writ den. 94-2047 (La. 11/4/94), 644 So.2d 1052; Lee v. Great Southwest Fire Insurance Co., 493 So.2d 789, 793 (La.App. 2d Cir.1986). In Gilmore v. Russell, 555 So.2d 511 (La. App. 4th Cir.1989), writ denied, 559 So.2d 140, 142 (La.1990), we approved a $150,000.00 judge award to a plaintiff with a single level lumbar disc injury who rejected surgery in favor of conservative treatment. Accordingly, in the instant case we find that the amount to which Captain Lyons is entitled for pain and suffering is $150,000.00, and we therefore award that amount.
Turning to special damages, we must consider the report of plaintiff's economic expert, Dr. Wolfson, which was introduced into evidence, as well as the testimony of two vocational rehabilitation experts. Dr. Wolfson computed plaintiff's past lost wages to be $30,012.00 based on income tax returns showing plaintiff had an annual income of $23,000.00 to $28,000.00 as a boat captain. Both vocational rehabilitation experts testified that the plaintiff was functionally illiterate, with reading skills at the second grade level and mathematic skills at the fifth grade level. Mr. Roberts, testifying for the plaintiff, stated that because of plaintiff's age, medical limitations and lack of education, he is unemployable and will remain so over his remaining work-life expectancy. Ms. Bower, a vocational rehabilitation counselor testifying for the defendant, testified that her survey of the job market revealed several "light duty" jobs which plaintiff could be trained to perform, including granulator operator, counter attendant and car wash attendant.
Our conclusion based on the record is that the evidence preponderates in favor of the plaintiff being unable to earn a living for the remainder of his life. Dr. Wolfson calculated plaintiff's future loss of income, assuming Captain Lyon's inability to return to work, to be $104,860.00. He also calculated plaintiff's loss of services to be $39,045.00, and loss of meals to be $12,433.00.
Based on this evidence, we award plaintiff special damages in the amount of $175,000.00, bringing the total damages to $325,000.00.
Plaintiff additionally contends that he is entitled to prejudgment interest from the date of the accident on the portion of the award attributed to the unseaworthiness aspect of the case. See Reeled Tubing, Inc. v. M/V CHAD G, 794 F.2d 1026 (5th Cir.1986). If a Jones Act claim is joined with an unseaworthiness claim and both are tried to the court without a jury, as here, the allowance of prejudgment interest is within the discretion of the trial court. Ceja v. Mike Hooks, Inc., supra, at 1196 (5th Cir. 1982). In a case where there is a single harm from a single cause, there is no realistic basis for apportioning damages between the general maritime law claim and the Jones *189 Act claim; therefore, the plaintiff is not entitled to prejudgment interest. See McPhillamy v. Brown & Root, Inc., 810 F.2d 529, 531-32 (5th Cir.1987), wherein the court denied prejudgment interest to a seaman who was struck in the face by a frayed cable which had broken loose from a barge. In the instant case, because the unseaworthiness of the vessel and the negligence of the employer resulted in a single accident, we find no basis for apportioning damages and therefore, we decline to award prejudgment interest.
Accordingly, for the reasons given, we reverse the judgment of the trial court. We find the defendant Fleet Operators, Inc. liable to plaintiff in the amount of $325,000.00, and hereby award that amount plus costs and interest.
REVERSED AND RENDERED.