733 So.2d 1217 (1999)
Billy Ray BREELAND, Plaintiff-Appellant,
v.
FALCON DRILLING COMPANY, INC., Defendant-Appellee.
No. 98-1790.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1999.
Rehearing Denied June 30, 1999.
*1218 Karl Wiedemann, New Orleans, for Billy Ray Breeland.
Charles A. Mouton, Lafayette, for Falcon Drilling Company, Inc.
Before: DOUCET, Chief Judge, COOKS and PICKETT, Judges.
PICKETT, Judge.
The Plaintiff, Billy Ray Breeland, appeals a judgment of the trial court finding in favor of the Defendant, Falcon Drilling Company, Inc., and dismissing his seaman's suit for damages with prejudice. For the following reasons, we affirm.

FACTS
This appeal arises out of an accident that occurred on the jack-up drilling rig ACHILLES in the Gulf of Mexico off the coast of Cameron Parish, Louisiana. The accident occurred on or about August 5, 1993. On the day of the accident, the Plaintiff, Billy Ray Breeland, was employed as a rig welder for the Defendant, Falcon Drilling Company, Inc. (Falcon), on ACHILLES. Breeland worked under the supervision of the Falcon rig manager, John Savage.[1]
Prior to the day of the accident, Breeland and Savage discussed what jobs Breeland would need to address during his seven-day hitch.[2] One job they discussed was replacing the steel plate at the bottom *1219 of the shale shaker discharge ditch. The discharge ditch, described as an "overboard ditch," disposed of the excess drilling mud over the side of the rig. The bottom of the overboard ditch on the ACHILLES had been leaking due to corrosion caused over time. The overboard ditch was located in a secluded area, however, the leakage fell onto the main deck below. Since the overboard ditch could not be repaired while the rig was in a circulating mode and mud constantly passing through the ditch, there was a limited amount of time to repair the bottom of the ditch. The bottom of the overboard ditch needed to be replaced with two 2' × 8' ×½" steel plates. The two plates would have to be cut from a 4' × 8' ×½" steel plate. On August 4, 1993, the steel plate was moved by crane to the welding area so that Breeland could cut it in half. Breeland, however, waited until the next morning to cut the plate. After cutting the plate, Breeland saw Savage in the galley and informed him that he needed help in turning the plates over in order to remove the slag off the underside of the plates. Savage informed Breeland that he would send some help. While waiting for help to arrive, Breeland testified that he received two calls from Savaged demanding that he get the job done because of the time constraints. Breeland then attempted to flip the approximately 350 pound plate without any help, and injured his neck. However, Breeland failed to relate the accident to Savage until the following day. At that time Savage refused to complete an accident report, in violation of Falcon's policy. Breeland worked the remainder of his seven-day hitch, as well as two other sevenday hitches, before seeking medical attention.
After seeing several doctors regarding his condition, Breeland filed a seaman's suit for damages on July 18, 1995, naming Falcon as the Defendant. The matter was tried on April 21-22, and June 23, 1998. On June 26, 1998, the trial court issued written reasons concluding that Breeland had failed to establish that Falcon was negligent in causing the accident and that ACHILLES was seaworthy at the time of the accident. The trial court further concluded that Breeland's claim should be dismissed with prejudice. A judgment to this effect was signed on July 23, 1998. Breeland now appeals and alleges three assignments of error:
1. The lower court erred in silently invoking [the] prohibited [defense of] "assumption of the risk" in this seaman's case.
2. The lower court erred in concluding that the drilling rig "ACHILLES" was seaworthy.
3. The lower court erred in failing to find Defendant guilty of Jones Act negligence.

OPINION

Assumption of the Risk
In Lyons v. Fleet Operators, Inc., 96-0148, p. 5 (La.App. 4 Cir. 6/5/96); 676 So.2d 182, 186, writ denied, 96-2142 (La.11/8/96); 683 So.2d 278, our brethren in the Fourth Circuit Court of Appeal addressed the theory of assumption of the risk as it relates to a seaman's case:
Assumption of the risk is not a viable defense in a seaman's case because a seaman must accept, without protest, and without critical examination, the working conditions and appliances presented as part of his employment. Marchese v. Moore-McCormack Lines, Inc., 525 F.2d 831 (2nd Cir.1975). It is not even a defense when the seaman knowingly uses a defective appliance instead of performing his duty in a way he knows to be safe. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); Movible Offshore v. Ousley, 346 F.2d 870 (5th Cir.1965). A seaman's duty is to do the work assigned, not to find the safest way to perform his work. See Ceja v. Mike Hooks, Inc., 690 F.2d 1191 (5th Cir. 1982).
*1220 However, comparative negligence applies in both Jones Act and unseaworthiness actions. Cormier v. Cliffs Drilling Co., 93-1260 (La.App. 3 Cir. 5/4/94); 640 So.2d 552. In such cases, the "defendant has the burden of proving that [the] plaintiff was contributorily negligent and that such negligence was a proximate cause in producing his injury." Id., 93-1260 at p. 7, 640 So.2d at 556-57. "Generally, a plaintiffs own fault will proportionately reduce his recovery for injuries caused by unseaworthiness. However, if a seaman's own negligence was the sole cause of his injuries, recovery will be barred." Foster v. Destin Trading Corp., 96-0803, p. 7 (La.5/30/97); 700 So.2d 199, 210 (citations omitted).
In the case sub judice, the trial court never makes mention of the theory of assumption of the risk. In his argument, Breeland states that "[a]n objective reading of the written reasons of his Honor below leads to the inescapable conclusion the he invoked `assumption of the risk', [sic] without verbalizing the prohibited term, as a vehicle to rejecting [P]laintiffs seaman cause of action." We do not agree with Breeland's contention. In ruling against Breeland, the trial court stated that "Plaintiffs attempt to lift a heavy object without obtaining assistance which he knew was required was the sole proximate cause of the injury." The trial court considered Breeland's actions as contributory negligence and not assumption of the risk. Thus, the trial court found Breeland's negligence to be the sole cause of his injuries and that he failed to carry his burden of proof against Falcon. Accordingly, we find this assignment of error to be without merit.

Seaworthiness
With regard to unseaworthiness, this court has previously stated:
Under general maritime law, a shipowner has an absolute duty to provide a vessel that is seaworthy. Babineaux v. Lykes Bros. S.S. Co., Inc., 608 So.2d 659 (La.App. 3 Cir.1992), writ denied, 610 So.2d 819 (La.1993). The duty to provide a seaworthy vessel requires that the vessel's gear, appurtenances and operation must be reasonably safe. Jenkins v. Kerr-McGee Corp., 613 So.2d 1097 (La.App. 3 Cir.), writ denied, 616 So.2d 701, 702 (La.1993). This duty imposes nondelegable liability without fault and is independent of the Jones Act duty to exercise reasonable care. Id. A factual finding of unseaworthiness by the trier of fact is reviewed under the clearly erroneous standard. Griffin v. LeCompte, 471 So.2d 1382 (La.1985).
Faul v. State, Dept. of Transp. and Development, 94-502, p. 3 (La.App. 3 Cir. 11/2/94); 649 So.2d 493, 496. "A vessel crew that is inadequately trained, that is not instructed in the use of equipment, or that engages in unsafe methods of work, can constitute unseaworthiness, as well as the failure of the shipowner to provide adequate equipment for the crew to complete an assigned task." Milstead v. Diamond M Offshore, Inc., 94-1582, p. 9 (La. App. 3 Cir. 9/6/95); 663 So.2d 137, 144 (citations omitted), affirmed in part; reversed in part and remanded, 95-2446 (La.7/2/96); 676 So.2d 89.
In the instant matter, Breeland alleges three separate causes of unseaworthiness: (1) The discharge ditch was in disrepair; (2) The rig manager, Savage, was unfit; and (3) The number of men assigned to perform the task was insufficient. The trial court, in its written reasons, found that "[t]he ACHILLES was fully equipped with an adequate crew on the date of the accident[,]" and, accordingly, was seaworthy. Regarding the leak in the discharge ditch, the trial court found it to be "in a condition which allowed drilling operations to continue despite its being only partially repaired."
We find no merit in Breeland's allegations of unseaworthiness regarding Savage and the number of men assigned to perform the task. The evidence and testimony clearly indicates that Savage and Breeland discussed the job the day prior to the accident. In fact, Breeland had the *1221 metal plate moved by crane to the welding area after his first discussion with Breeland. However, it was Breeland who decided not to cut the plate until the next day, when the window of opportunity to repair the ditch existed. It was also Breeland who decided to attempt to turn the plate on his own. Savage informed Breeland that he would supply extra help to turn the plate. When help did not arrive timely, Breeland took it upon himself to attempt to turn the plate. Breeland's explanation for his actions was that he was intimidated by Savage who had telephoned him and told him to get the job done. He further stated that neither the crane nor any roustabouts were available to assist him because everyone was busy performing the casing operation. However, the testimony reflects that the crane and roustabouts assisted in moving the plate later in the day during the casing operation. Savage also testified that he had previously told Breeland to get help from the crane operator when he needed assistance moving anything heavy. As such, Breeland was free to seek assistance without having to go through Savage for the extra assistance. Accordingly, we do not find that ACHILLES was unseaworthy due to Savage's fitness as rig manager, or due to the number of men assigned to perform the task.
The testimony and evidence at trial regarding the leakage indicated that the mud leaking from the discharge ditch fell onto the main deck where Falcon's employees traveled. The mud was removed by employees who continually washed off the deck. It is obvious that such an environment is hazardous to the personnel who travel back and forth over the area. Accordingly, we find that the leakage from the discharge ditch unto the main deck created a hazardous condition that rendered ACHILLES unseaworthy. We further find that the trial court erred in concluding that ACHILLES was seaworthy.
"[T]he plaintiff who seeks to recover for injuries under the theory that a vessel was unseaworthy must prove that the unseaworthy condition was a proximate cause of his injuries; namely, that the unseaworthy condition played a substantial part in bringing about or actually causing plaintiffs injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthy condition."
Milstead, 94-1582 at p. 10, 663 So.2d at 144 [citing Brister, 946 F.2d 350; Johnson, 845 F.2d 1347].
There is no doubt that the leak in the discharge ditch was the reason that Breeland was performing the task of cutting the steel plate. Breeland contends that since he was injured while performing activities in preparing to fix the leak, the leak was a proximate cause of the injury. We do not agree. Breeland injured his neck while attempting to flip a 350-pound metal plate over. Simply because this was a necessary step in repairing the leak, does not automatically cause the leak to be a proximate cause of Breeland's injury. Thus, although the trial court erred by concluding ACHILLES was seaworthy, we find this error to be harmless because Breeland failed to prove the condition of unseaworthiness was a proximate cause of his injury.

Negligence
The manifest error standard of review applies in both general maritime and Jones Act cases. Milstead, 676 So.2d 89. We have previously discussed the burden of proof in Jones Act negligence cases:
To prevail in a negligence claim, the plaintiff has to show that the defendant failed to exercise reasonable care in the maintenance of a safe work environment. Under the Jones Act, an employer is liable for the injuries negligently inflicted on its employees by its agents, officers and employees. Evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability. The *1222 burden on a plaintiff for showing causation in a Jones Act claim is "feather-weight."
Caravalho v. Dual Drilling Services, Inc., 93-560, p. 6 (La.App. 3 Cir. 2/2/94); 631 So.2d 725, 729, writ denied, 94-0878 (La.5/13/94); 637 So.2d 1074 (citations omitted). "Reviewing the issue of the plaintiff's contributory negligence, we keep in mind that a seaman's duty is to do his work as he is instructed and his duty to protect himself is slight." Cormier, 93-1260 at p. 4, 640 So.2d at 555 [citing Babineaux, 608 So.2d at 662].
After reviewing the record in its entirety, we find no manifest error in the trial court's conclusion that Falcon was not negligent in this matter. Breeland presented substantial evidence as to the injury to his neck, but failed to present persuasive evidence regarding Falcon's negligence. While the burden of proving causation is "featherweight," Breeland must show some evidence of Falcon's negligence.
Breeland maintains that Falcon was negligent due to Savage's actions. However, the trial court disregarded this testimony and concluded that Breeland's negligent action of lifting an object he knew required assistance was the proximate cause of his injury. "The finding of liability by the trial court is a finding of fact which a reviewing court may not disturb unless, (a) the record evidence does not furnish a sufficient basis for that finding, or (b) the finding is clearly wrong." Trahan v. State, DOTD, 536 So.2d 1269, 1271 (La.App. 3 Cir.1988), writ denied, 541 So.2d 854 (La.1989) [citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); and Canter v. Koehring Co., 283 So.2d 716 (La.1973)]. We find that the record does sufficiently support the trial court's findings in this matter. Accordingly, this assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby affirmed. All costs of this appeal are assessed to the Plaintiff-Appellant, Billy Ray Breeland.
AFFIRMED.
NOTES
[1] The rig manager is also commonly referred to as the "toolpusher."
[2] Breeland, at the time of the accident, had a work schedule of seven days on and seven days off.