BELSOME, J.,
Dissents with Reasons.
hi respectfully dissent.
Appellant, Reggie Mack, argues that the trial court erred in granting partial summary judgment in favor of KBR and EPL given that genuine issues of material fact exist in this matter regarding the negligent action and omissions on behalf of KBR and EPL, which caused or contributed to Appellant’s accident and resulting injuries.
Appellant seeks recovery through negligence claims under both the Jones Act and General Maritime Law.[1] “Issues of negligence and causation in admiralty cases are treated as fact questions.” Wood v. SubSea International, Inc., 99-1320 (La.App. 4 Cir. 3/29/00); 766 So.2d 563, 568. “In a Jones Act case, evidence of the ‘slightest negligence’ is sufficient to sustain a finding of liability; moreover, the plaintiffs burden to show causation is ‘featherweight.’ ” Lyons v. Fleet Operators, Inc., 96-0148 (La.App. 4 Cir. 6/5/96); 676 So.2d 182, 187. In light of the low burden of proving negligence in a Jones Act claim, summary judgment will rarely be appropriate for disposing of a plaintiff-seaman’s claims.
|2The principle of comparative negligence applies in admiralty cases. However, “[assumption of the risk is not a viable defense in a seaman’s case because a seaman must accept, without protest, and without critical examination, the working conditions and appliances presented as part of his employ *59 ment ... A seaman’s duty is to do the work assigned, not to find the safest way to perform his work.” Breeland v. Falcon Drilling Co., Inc., 98-1790 (La. App. 3 Cir. 5/5/99); 733 So.2d 1217, 1219 (emphasis added). “Reviewing the issue of the plaintiffs contributory negligence, we keep in mind that a seaman’s duty is to do his work as he is instructed and his duty to protect himself is slight.” Cormier v. Cliff’s Drilling Company, 93-1260 (La. App. 3 Cir. 5/4/94); 640 So.2d 552, 555. A seaman has a limited duty to protect himself while performing an assigned task.
Louisiana adopted the principle of comparative fault in 1996, with the amendment of La. C.C. art. 2323, thus the concept of contributory negligence has been replaced in Louisiana. It provides:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
LSA-C.C. Art. 2323. We read La. C.C. art. 2323 to allow a plaintiff to recover some damages even if he is 99 percent responsible for his injuries.
|sWe now review the evidence that was before trial court. In his deposition, the Appellant explained why he lifted the pipe by himself.
A: Well, I was — Tyrone had left and went somewhere and I was standing there. And I waited and waited, and he never come back. So I picked the pipe up, put it up in the jack stand, that’s when my leg went to burning.
Q: Is that something you and Tyrone would do together?
A: Yes, sir.
Q: Had you ever done it by yourself before?
A: No sir.
Q: Why did you do it by yourself?
A: Well, the job needed doing, and I was tired of waiting on him.
He also testified that he had not received any specific training on the job he was doing at the time he was injured.
Q: Did anybody ever tell you that you weren’t supposed to pick up a piece of pipe by yourself, that you and the guy out there, Tyrone with you, you should only do it together?
A: No, sir.
Appellant testified that the job was not explicitly rushed, but this should be considered in light of the general atmosphere found aboard well jacket jobs. On any outdoor job, the potential for changing conditions creates a sense of urgency in the work. It is also physically demanding work. Additionally, Appellant testified that “the job needed doing.” It seems unfair to penalize a worker for attempting to do his job, when his other option was to *60 remain docile indefinitely waiting on his co-worker to return.
Ivor Smith, a project manager for KBR, testified that he believed it was more appropriate for mechanical means to be used for the type of job Appellant was performing.
Q: Does KBR have any policies, rules or recommendations on whether or not the crane should be used to move 4-inch pipe into the pipe stand?
A: Well, it is a standard practice for mechanical equipment to be used for lifting pipe from one place to another.
|4Q: Does it make any difference on the length of that pipe?
A: It shouldn’t.
Q: Am I correct to say that any time mechanical means can be used to move pipe rather than manual means, you should use the mechanical means?
A: You should it use it absolutely.
He also testified that the crane should have been used to move a section of pipe as large as the piece Plaintiff-Appellant moved when he hurt himself.
Q: If a person was trying to move a 4-foot piece of pipe of 4-inch pipe on the ALLEN BENOIT, to put something that big up into a pipe stand, they should use the crane to do that, right?
A: I would say yes.
James Blair, another KBR employee, also provided deposition testimony. He explained that normally the crane on the ALLEN BENOIT was used to move sections of pipe.
Q: Okay. When you do see the ALLEN BENOIT on your lease, and when you do see employees or people working with those yellow pipe
stands like the ones I circled, and when you do see those same people putting pipe into the pipe stand, what percentage of the time are they using the crane to assist them to put it in the pipe stand, versus manually putting the pipe in the pipe stand?
A: Nearly 100 percent of the time they’re using the crane.
Q: Have you ever seen people manually putting 4-inch pipe onto those pipe stands?
A: Short pieces.
Q: Define “short” for me. What do you mean by that?
A: Maybe four feet or less.
Kim Anderson, a production foreman for EPL, testified that KBR riggers were not given guidelines on how much pipe they should lift.
Q: Are the KBR riggers given any guidelines on the largest length of pipe, four-inch, that they should try to manually put into the pipe stands out there?
A: No.
[[Image here]]
Q: Does EPL provide any schooling or training to the KBR riggers specifically on the maximum amount of weight one person should try to pick up?
A: No ...
| ¡¡Thus, we know the following: oil rig work is demanding; Appellant wanted to finish his job; Appellant had no one to help him do the job; a crane is the recommended way to move large sections of pipe; a crane was available but was not being used; Appellant had no mechanical means at his disposal to help him do the job; and, KBR and EPL provided no formal limits on lifting pipe.
*61 The law of the Fourth Circuit provides that the reasonableness of a seaman’s actions in the face of a known risk is a question of fact. “Where an employee takes actions pursuant to the discharge of his employment duties in the face of a known risk, which actions are reasonable in relation to those duties, then the employee is not comparatively negligent ... What actions are reasonable under the circumstances is a question of fact to be determined by the factfinder.” Wood v. SubSea International, Inc., 99-1320 (La. App. 4 Cir. 3/29/00); 766 So.2d 563, 569 (emphasis added). The Court in Wood continued: “Factors to be considered in determining what is reasonable include the availability and practicability of other options.” Id. at 569.
In light of these facts and the law on a seaman’s reasonable behavior, we believe Appellant produced “factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” La. C.C.P. art. 966(C). Namely, KBR’s and EPL’s acts and omissions contributed to Appellant’s behavior and ultimately his injury. Appellant’s decision to lift the pipe by himself may have been risky; but it also appears reasonable considering the dearth of other available options. As reasonableness is a question for a factfinder, Appellant’s claims should not have been thrown out on summary judgment.
KBR and EPL rely on Boudreaux v. U.S., 280 F.3d 461 (5th Cir.2002), and Breeland, supra,, to support their position. These cases may be factually analogous to the case at hand. However, what is significant about Boudreaux and Breeland is | fithat they both went to trial and were not disposed of on summary judgment, which is the appropriate disposition of Appellant’s case.
Appellant’s decision to lift the pipe without assistance may or may not have been reasonable in the face of the acts and omissions by KBR and EPL. But that is a question for the factfinder. For the reasons discussed, Appellant’s case should not be inappropriately circumvented by the summary judgment process. Therefore, I would remand the case to the trial court for further proceedings.

. Appellees have not conceded that Appellant is a seaman; however, they feel "that even if plaintiff is found to be a Jones Act Seaman, he will not be able to recover damages under the statute, nor will he be able to recover damages under the General Maritime Law because the undisputed facts show that no negligence can be proved against either KBR or EPL.”